## Staunton

### George L. Durham, Jr. v. National Pool Equipment Company of Virginia.

September 11, 1964.

Record No. 5760.

Present, All the Justices.

*H. H. Tiffany*, for the plaintiff in error.

*Edward R. Slaughter, Jr. (Richard L. Williams; Battle, Neal, Harris, Minor & Williams*, on brief), for the defendant in error.

Snead, J., delivered the opinion of the court.

George L. Durham, Jr., plaintiff, instituted an action for damages in the sum of $5,000 against National Pool Equipment Company of Virginia, Alexandria, Virginia, defendant. The plaintiff alleged in his motion for judgment that defendant agreed to supply him "all the necessary pool equipment, to call for labor as needed locally and to supervise such labor and that within fifteen days from date of breaking ground a certain swimming pool would be completed" at his motel near Crozet; that plaintiff was to pay for the equipment, labor, supervisor and other expenses necessary for the installation of the pool; that "At the end of the job the total monies which the plaintiff had advanced would be calculated and a reimbursement was to be made, by * * * defendant, for all amounts expended or advanced which exceeded the sum of $8,000.00", and that he had "expended or advanced" approximately $13,000 but had been unable to obtain any refund from defendant.

In its grounds of defense, defendant denied the allegations in the motion for judgment and stated that it entered into a written contract with plaintiff dated April 12, 1961, and accepted April 24, 1961 by plaintiff, whereby it agreed to supply the swimming pool equipment, and that it also entered into another written contract with plaintiff, dated April 24, 1961, whereby it agreed to furnish technical advisory service. A copy of each instrument was attached to the pleading. The defendant further alleged that there were no other agreements of any kind between the parties.

A jury trial was had on October 23, 1962. Immediately after Durham had testified, but before he had rested his case, defendant moved to strike plaintiff's evidence. The trial court, being of opinion

that plaintiff's evidence failed to establish liability on the part of defendant, sustained the motion to strike, discharged the jury and entered summary judgment for defendant. The plaintiff excepted to the court's ruling and is here on a writ of error granted him.

The evidence may be summarized as follows: In the spring of 1961, Durham became interested in building a swimming pool at his motel, known as "Tidbit Motel" near Crozet. He contacted two construction companies in Charlottesville and one of them, Ardwood Construction Company, was interested in the job. Subsequently Richard Krach of "National Pool Equipment Company from Alexandria, Virginia" approached Durham concerning the proposed project. Durham asked Krach for a firm price on a 20′ x 40′ pool, but was told that he could not give one until the plans were drawn. About ten days later Krach returned with the plans. "He said he was ready to do business, that he had the plans approved and that the price was $8,000.00; that they could go to work immediately." In the meantime Messrs. Barrett and Day of Ardwood Construction Company had prepared plans and submitted a firm bid of "$8,400.00 or $8,-500.00", which Durham had accepted. A conference was had between Durham, Krach, Barrett and Day, at which time Barrett and Day agreed to rescind their contract with Durham so that he "could deal with the National Pool Equipment Company". Later that day Durham gave Krach a check for $5,123.93. He testified:

"Q. Who was there when you gave him that check?

"A. My wife, myself, and Mr. Krach were all sitting in the booth together.

"Q. Now, did Mr. Krach make any statements about the price for the complete pool when Mr. Barrett and Mr. Day were there?

"A. He guaranteed the price of $8,000.00 in the presence of Mr. Barrett and Mr. Day, guaranteed it.

"The way I was supposed to pay for the pool was to pay the $5,123.93, which was the price of the pool equipment, the side walls of the pool, the ladders, the lights, diving board, the filtering system, the filtering media, chemical machine—chemical feeder machine, valves, mercury hygrometers—everything except the pipe and cement which I would have to buy locally.

"Everything else in this pool came from National Pool Equipment Company, which I paid for that day.

"The rest of the money was to be paid at the rate of $35.00 a day for their supervisor who they would send to me, the price of the cement and the pipe that we would buy locally, and the labor that

would be needed to assist the supervisor of National Pool Equipment Company; a total of $8,000.00 or less.

"If it was less it was to my benefit. If it was more than $8,000.00— he quoted me two or three cases where National Pool had had to refund the money and had been sued for it.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"A. Of course, I was interested in the $8,000.00 figure and if it would come out less I was more interested, but I was very anxious that this not cost any more than $8,000.00. \* \* \*."

On April 24, 1961, the day Durham delivered the check for $5,-123.93 to Krach, he signed and delivered to Krach two contracts with National Pool Equipment Co., of Florence, Alabama, which were introduced in evidence over the objection of plaintiff. One was captioned "Quotation", which listed the pool equipment to be supplied at a price of $5,123.93. The other was titled "Contract For Technical Advisory Service." In it the company agreed to furnish an experienced and qualified technical advisor "to assist, consult and advise" in the construction of the pool and Durham agreed to pay the technical advisor $35.00 per day plus reasonable living and traveling expenses. Pursuant to this agreement Henry Haynes, supervisor and field engineer, was sent by the company to the project, which was commenced on May 1, 1961. On May 23, Durham notified Krach that he had already expended more than $8,000 on the pool. Krach promised to come to see him the next day about it but "he did not come." Haynes left the project about a week before it was completed. Durham paid all the bills which totalled $12,221.76, including the $5,123.93 for equipment.

The defendant's motion to strike at the conclusion of Durham's testimony but before he had rested his case was on the ground that the contract of the parties was embodied in the two written contracts executed on April 24, 1961, which was subsequent to the alleged oral agreement, and the parties were bound by the instruments. In sustaining the motion the trial court held that the written contracts were "completely inconsistent" with the alleged oral agreement, and that plaintiff's case could rise no higher than his own testimony.

In his assignments of error plaintiff asserts that the court erred (1) in admitting the two contracts executed on April 24, 1961, because they had not been accepted by defendant, and (2) in striking plaintiff's evidence, because the two instruments were not an inte-

grated and merged contract of the parties, and did not constitute the entire contract of the parties and, therefore, the parol evidence rule was not applicable.

The plaintiff presents these issues in this appeal: "(1) whether the quotation and contract for advisory services can be admitted in this action as evidence, either by the plaintiff or by the defendant, and (2) whether the contract alleged by the plaintiff was barred by the parol evidence rule."

When the two instruments were offered in evidence by defendant, plaintiff's sole objection was that they were inadmissible because it had not been shown that they had been accepted after Durham had signed them. We find this contention to be without merit. In the first place, the contract for technical advisory service was signed by both parties to it. It is true that the "Quotation" contract was only signed by Durham, but it is manifest from his testimony that the company furnished the materials specified therein and hence formal acceptance was not necessary. Assent may be inferred from the acts and conduct of the parties. *Bernstein* v. *Bord*, 146 Va. 670, 675, 132 S. E. 698; 4 M. J., Contracts, § 22, p. 352. Aside from this fact, we may consider this issue abandoned as plaintiff failed to argue it in his brief. See rule 5:12 § 1(d), Rules of Court.

As pointed out by defendant, the motion for judgment "apparently" did not allege that this action was based upon a contract with defendant to construct the pool. We agree with defendant that "It alleged basically an indemnification agreement." That is the sole ground for damages which plaintiff relied upon in oral argument before us.

The plaintiff contends here that he brought this action against National Pool Equipment Company of Virginia, whereas the instruments he signed represented an agreement with National Pool Equipment Company, of Florence, Alabama, "a separate and distinct corporation from defendant herein." Thus, he says, he was not precluded by the parol evidence rule to establish his alleged parol agreement with defendant.

On the other hand, defendant contends that it was not shown that more than one "National Pool Equipment Company" was involved in the entire transaction; that plaintiff did not rely upon separate corporate entities in the court below, but instead he contended that the alleged oral contract did not come within the purview of the parol evidence rule, and that there was no evidence of any

consideration passing between plaintiff and National Pool Equipment Company of Virginia.

Durham's contention that the named defendant in the motion for judgment, "National Pool Equipment Company of Virginia", is a separate and distinct corporation from "National Pool Equipment Co." of Florence, Alabama, with which he contracted in writing, and hence the parol evidence rule does not preclude him from establishing his alleged agreement with defendant by parol evidence is raised here for the first time. The record is silent as to whether or not they are related corporations. At no time was this point mentioned to the trial judge. It is manifest from the entire record that this case was tried in the court below by the contesting parties on the theory that there was only one corporation involved in the entire transaction. Thus, under familiar principles, we will not consider this point on appeal. See *Wood* v. *Southern Shale Brick Corp.*, 173 Va. 364, 367, 4 S. E. 2d 360.

The "Quotation" agreement between Durham and National Pool Equipment Co., Florence, Alabama, contained this provision: "This quotation * * * shall constitute the entire agreement between the parties hereto, it being expressly understood that there are no express or implied warranties, representations, commitments or statements made by Seller or any of its agents, servants or employees except as provided herein." The "Contract For Technical Advisory Service" between the same parties provided that because the company "is not in the construction business it cannot accept responsibility for the construction performed" by Durham or "any contractors, sub-contractors, or laborers." It further provided: "All other agreements, both oral or written, expressed, or implied between these two parties concerning said advisory service shall not supersede this agreement and are hereby cancelled."

In this State the general rule is that parol evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to alter, vary, contradict, add to, substract from or explain the terms of a complete, unambiguous, unconditional written instrument. *Godwin* v. *Kerns*, 178 Va. 447, 451, 17 S. E. 2d 410; *Jones* v. *Franklin*, 160 Va. 266, 270, 168 S. E. 753. Under this rule when the parties set out the terms of their agreement in a clear and explicit writing then such writing is the sole memorial of the contract and it is conclusively concluded that the writing contains the whole contract and is the sole evidence of the agreement. *Stewart-Warner*

*Corp.* v. *Smithey*, 163 Va. 476, 487, 175 S. E. 882; *Pulaski Bank, Ex'r* v. *Harrell*, 203 Va. 227, 233, 123 S. E. 2d 382.

However, where it is apparent that the written contract is not a complete integration of all prior and contemporaneous negotiations which have been agreed upon by the parties, then parol evidence is admissible to supply those things omitted if the part omitted is not inconsistent with or contrary to the writing. It must be independent of and in addition to the written terms so that no merger has taken place. *Harvey* v. *R., F. & P. Ry. Co.*, 162 Va. 49, 55-56, 173 S. E. 351; *Lindsay* v. *Bevins*, 204 Va. 74, 75, 128 S. E. 2d 920.

A separate oral agreement as to any matter on which the written contract is silent, and which is not inconsistent with the terms thereof, may be proved by parol evidence if it was not the intention of the parties that the instrument was the complete and final statement of the entire transaction, and if such oral agreement is collateral and related to a subject distinct from that to which the written contract applied. It cannot be so closely connected with the principal transaction as to form part and parcel of it. *Trout* v. *Norfolk & W. R. Co.*, 107 Va. 576, 584, 59 S. E. 394; *Adams* v. *Seymour*, 191 Va. 372, 382-3, 61 S. E. 2d 23; 7 M. J., Evidence, § 154, p. 515.

For a further discussion of the exceptions to the parol evidence rule see *High Knob, Inc.* v. *Allen*, 205 Va. 503, 138 S. E. 2d 49, this day decided.

In our view, plaintiff was not precluded by the parol evidence rule from offering parol evidence tending to establish the alleged indemnity agreement between plaintiff and defendant. The "Quotation" contract was merely an agreement to supply certain equipment for the construction of the pool at a stated price. The "Contract For Technical Advisory Service" merely provided that the company agreed to furnish a technical advisor to assist and advise Durham in the construction of the pool at the rate of $35 per day plus his transportation and living expenses. The limitation provisions in the two contracts heretofore mentioned have reference to the equipment agreed to be supplied and to the technical services to be rendered. Neither contract dealt with the actual construction or any guarantee of the maximum cost of the pool. It is not necessarily to be concluded from the instruments that they contained the complete and final elements of the entire transaction. The establishment of the alleged agreement by parol evidence would not in any way conflict with, alter, vary or contradict the terms of the written contracts.

The claimed collateral agreement was independent of and in addition to the written terms so that no merger took place.

In striking plaintiff's evidence the trial judge stated, among other things, that plaintiff's case "can't rise any higher than his own testimony." *Massie* v. *Firmstone*, 134 Va. 450, 462, 114 S. E. 652. In *Crew* v. *Nelson*, 188 Va. 108, 113, 49 S. E. 2d 326, the doctrine enunciated in *Massie* v. *Firmstone, supra,* was analyzed and discussed in some detail. There we said:

"While the decisions on the subject from other jurisdictions are not harmonious, this court, beginning with the earlier case of *Virginia Ry., etc., Co.* v. *Godsey*, 117 Va. 167, 83 S. E. 1072, and continuing down to the present time, has consistently held that where a litigant testifies unequivocally to facts within his knowledge and upon which his case turns, he is bound thereby and cannot rely upon other evidence in conflict with his own testimony to strengthen his case." See also *Clayton* v. *Taylor*, 193 Va. 555, 561, 69 S. E. 2d 424; *Edmonds* v. *Electric Cooperative*, 197 Va. 540, 543, 90 S. E. 2d 188.

Here, there was no evidence adduced in conflict with Durham's testimony. He was the only witness who testified in his behalf before his evidence was struck. While the sufficiency of his evidence to sustain the alleged oral agreement might be questioned, he was entitled to introduce other evidence, not in conflict with his own testimony, in support thereof. He had not rested his case. Under the facts and circumstances here presented we cannot say, as a matter of law, that Durham's testimony showed that he had no case. The sustaining of the motion to strike was premature and constituted reversible error.

For the reasons stated, the judgment appealed from is reversed and the case is remanded for a new trial.

*Reversed and remanded.*