# Staunton

### High Knob, Incorporated v. George J. Allen, Et Al.

September 11, 1964.

Record No. 5779.

Present, All the Justices.

*Henry H. Whiting* (*John F. Ewell; J. Sloan Kuykendall; Kuykendall & Whiting*, on brief), for the appellant.

*James C. Roberts* (*William J. Phillips; Tucker, Mays, Moore & Reed*, on brief), for the appellees.

I'ANSON, J., delivered the opinion of the court.

This is an appeal by High Knob, Incorporated, appellant herein, from a decree permanently restraining and enjoining it from cutting off the water supply to the home of George J. Allen, one of the appellees herein, and requiring appellant to furnish a reasonable quantity of water to Allen and J. R. Roberson, Jr., the other appellee herein, who was permitted to intervene, conditioned upon appellees' executing a water service contract in accordance with the terms of the chancellor's decree.

Appellant contends that the chancellor erred in (1) admitting evidence as to alleged oral agreements between the parties; (2) holding that it was obligated to furnish water when there was no evidence of any agreement or contract between the parties containing the terms comprised in the chancellor's decree; and (3) not defining what would be "a reasonable supply of water."

Allen and Roberson entered into separate written sales contracts with High Knob to purchase certain lots in the residential subdivision developed by it. No reference was made in either of the sales contracts relative to High Knob's supplying water to residences to be built on the lots. Each deed of conveyance contained a covenant

that "no well, spring, or water system of any type which takes water from the ground shall be developed or maintained on any lot of this subdivision," but there was no reference in the deeds as to how Allen and Roberson were to obtain water.

Both Allen and Roberson testified that during the course of negotiations for purchase of the lots, Mr. McElroy, secretary of High Knob, stated that the corporation had a water system and would furnish water to houses constructed in the subdivision for a $200 hook-on fee; that this was the only consideration to be paid for water service; and that this arrangement was one of the inducements to purchase the lots.

Allen also testified that after constructing a home on his property he was allowed to connect to High Knob's water main; that he tendered the $200 hook-on fee on two separate occasions but it was not accepted; that six months after the water tap was made High Knob presented to him a water contract which he refused to sign because its terms were not in accordance with his agreement with McElroy; and that High Knob then severed his water connection by installing a cut-off valve on its property, but he turned the valve on so he could obtain water.

Roberson testified that after erecting a dwelling on his lots he tendered the $200 hook-on fee to High Knob but it was not accepted; that he refused to sign the water service contract submitted to him because it was not in accordance with the oral agreement; and that High Knob had refused to supply him with water.

McElroy testified that he did not recall saying, during the negotiations with Allen, that High Knob would supply him with water for a $200 hook-on fee and that there would be no further charge. He denied telling Roberson that the hook-on fee would be the only charge made for water. He stated that he told Roberson that High Knob had worked out the details of the water system; that they were trying to work out an "equitable system" and hoped that it would not be necessary to make a monthly charge for water; and that there would be a hook-on fee in the neighborhood of $200 to $250.

The pertinent parts of the proposed water contracts submitted to Allen and Roberson provided: that they would be entitled to receive water under such terms and conditions "as High Knob may name"; that Allen and Roberson would pay the cost of connecting lines to the water main; that High Knob does not guarantee a supply of water but agrees to maintain a reservoir, pump and water lines to

supply them with water; that Allen and Roberson pay their proportionate share of replacement costs to maintain the water system; and that High Knob reserves the right to have water meters installed at the expense of Allen and Roberson to make charges for water furnished over a "minimum quantity."

After considering the evidence and exhibits the chancellor decreed that High Knob be permanently enjoined from cutting off Allen's supply of water, that Roberson be permitted to hook onto High Knob's water main, and that a reasonable quantity of water be furnished Allen and Roberson; all of which was conditioned upon their execution of water service contracts outlined by the court, the pertinent terms of which required that they pay their proportionate cost of maintaining High Knob's water system and that High Knob furnish a "reasonable quantity" of water, instead of a "minimum quantity," without charge.

Both Allen and Roberson consented to the chancellor's findings and executed the contracts required by his decree.

■ Appellant first contends that the testimony of Allen and Roberson was inadmissible under the parol evidence rule because such evidence varied the terms of the written sales contracts. We do not agree with this contention.

It is universally accepted that parol or extrinsic evidence will be excluded when offered to add to, subtract from, vary or contradict the terms of a written contract. But there are well recognized exceptions to the rule. Where the entire agreement has not been reduced to writing, parol evidence is admissible, not to contradict or vary its terms but to show additional independent facts contemporaneously agreed upon, in order to establish the entire contract between the parties. This is generally referred to as the partial integration doctrine. *Farmers Manufacturing Co.* v. *Woodworth,* 109 Va. 596, 601, 64 S. E. 986, 988; *Tuley* v. *Barton,* 79 Va. 387, 392; *Reed* v. *Dent,* 194 Va. 156, 163, 72 S. E. 2d 255, 258, 259; 20 Am. Jur., Evidence, § 1135, pp. 988, 989. See also *Durham* v. *National Pool Equipment Co.,* 205 Va. 441, 138 S. E. 2d 55, decided today.

Another exception to the rule, which is similar in many respects to the partial integration doctrine, is the collateral contract doctrine. Under this doctrine the parol evidence rule does not exclude parol proof of a prior or contemporaneous oral agreement that is independent of, collateral to and not inconsistent with the written contract, and which would not ordinarily be expected to be embodied in the

writing. *Sale* v. *Figg*, 164 Va. 402, 407-410, 180 S. E. 173, 175, 176. See *Davis* v. *Marr*, 200 Va. 479, 487, 106 S. E. 2d 722, 728; 32A C. J. S., Evidence, § 997, pp. 508-512; 20 Am. Jur., Evidence, § 1140, pp. 992, 993. See also, "The Parol Evidence Rule in Virginia," by Dean Moreland, 3 Wash. & Lee L. Rev. 185.

In the present case, the written contracts for the sale of the lots were silent as to how Allen and Roberson were to obtain water for their homes. The covenants in the deeds, forbidding them from drilling a well or in any other manner taking water from the ground for use in their dwellings, indicate that since the appellees were unable to take water from the ground there must of necessity have been some independent, collateral agreement for obtaining water. It is inconceivable that Allen and Roberson would covenant not to take water from the ground on their own property unless there had been an agreement to obtain it from another source. The written contracts dealt with the sale of property, and since there was to be an additional consideration paid for connecting to the water system, and this subject would not ordinarily be included in a contract for the sale of land, there is a strong indication that the parties were dealing with this question in collateral agreements. The oral agreements were not inconsistent with the written sales contracts and did not vary or contradict their terms. Even High Knob recognized that the question of furnishing water was to be covered in an independent collateral agreement when it submitted water service contracts to Allen and Roberson. Thus the evidence was admissible to prove the oral agreements, and did not violate the parol evidence rule.

High Knob argues in support of its second assignment of error that the oral agreements are void for indefiniteness and uncertainty; and that the chancellor could not make contracts between the parties and impose conditions to be complied with by Allen and Roberson as a prerequisite to granting them the equitable relief prayed for. We do not agree with this argument.

The law does not favor declaring contracts void for indefiniteness and uncertainty, and leans against a construction which has that tendency. While courts cannot make contracts for the parties, neither will they permit parties to be released from the obligations which they have assumed if this can be ascertained with reasonable certainty from language used, in the light of all the surrounding circumstances. This is especially true where there has been partial performance. *McDaniel* v. *Daves*, 139 Va. 178, 190, 123 S. E. 663, 666; *Phillips*

*Petroleum Company* v. *Buster*, 241 F. 2d 178 (C. A. 10th, 1957), cert. den. 355 U. S. 816, 78 S. Ct. 18, 2 L. ed. 2d 33. See also 1 Corbin on Contracts, § 95, p. 400, and the many cases there cited in the footnotes.

We have repeatedly said that in construing a contract, "Regard should be had to the intention of the parties, and such intention should be given effect. To arrive at this intention, regard is to be had to the situation of the parties, the subject matter of the agreement, the object which the parties intended to accomplish. A construction should be avoided if it can be done consistently with the tenor of the agreement, which would be unreasonable or unequal, and that construction which is most obviously just is to be favored as most in accordance with the presumed intention of the parties." *Seward* v. *American Hardware Co.*, 161 Va. 610, 625, 626, 171 S. E. 650, 659; *White* v. *Sayers*, 101 Va. 821, 826, 45 S. E. 747, 749. See also, 1 Williston on Contracts, 3d ed, §§ 37 and 38, pp. 110, 112.

High Knobb first says that the quantity of water it was to furnish was not stipulated and thus the oral agreements were void for uncertainty.

The evidence supports the chancellor's findings that High Knob set up a water system to supply water to residences built in the subdivision; and that it was obligated under its oral agreements with Allen and Roberson to allow them to connect to its water system for a $200 hook-on fee and to furnish them "a reasonable quantity of water." It is clear from the oral agreements that it was the intention of the parties that the quantity of water to be supplied was that which was reasonably necessary for residential purposes. A lesser quantity would not serve the needs of the parties and would be clearly inconsistent with High Knob's obligation to supply water. In fact the evidence shows that the oral agreement with Allen was partly performed when High Knob permitted him to connect with its water main and supplied "a reasonable quantity of water" without cost for a period of six months before cutting it off when Allen refused to sign the water contract tendered by High Knob, which he asserted was contrary to his oral agreement. Thus the oral agreements were not void for uncertainty as to the amount of water to be furnished.

 High Knob next says that the oral agreements cannot be specifically enforced because there was no agreement in respect to the length of time it was obligated to furnish water.

Time is usually considered an indispensable term to a definite

contract, but the failure of a contract to expressly provide the length of time it is to be performed does not render it void for uncertainty where the intent of the parties is otherwise ascertainable. *Cold Metal Process Co.* v. *United Engineering & F. Co.*, 107 F. 2d 27, 31; 17 C. J. S., Contracts, § 36(2), pp. 659, 660.

When we consider the object which the parties intended to accomplish under the oral agreements, the circumstances under which the agreements were made, and the terms of the water service contracts submitted by High Knob, it is implicit or implied that it was the intention of the parties that High Knob would furnish a reasonable quantity of water so long as its water system was capable of supplying it. Thus the oral agreements were not void for uncertainty as to the length of time water was to be furnished.

Moreover, the suit brought by Allen was for injunctive relief to restrain High Knob from cutting off its water supply. It was not an action for specific performance of the oral agreement, and the strict requirements of definiteness and certainty as to the terms of a contract are not applicable to him. The agreement between Allen and High Knob had been partly performed. Allen had erected his home in reliance on the oral promise of High Knob that it would furnish him water, and it is reasonably certain that he would suffer irreparable injury if his supply of water was cut off. Hence Allen was without an adequate remedy at law, and equity intervened to provide him with injunctive relief which was proper under the circumstances. *Phillips Petroleum Company* v. *Buster, supra*, 241 F. 2d at pp. 183, 184.

High Knob contended in oral argument before us that the oral agreements were barred by the statute of frauds, since they were not to be performed within one year from the date thereof. This point was raised for the first time in this Court, and having been waived in the court below, it will not now be considered by us.

High Knob says that the chancellor's action in requiring it to furnish a "reasonable supply" of water to Allen and Roberson, provided they would agree to pay their proportionate share in the cost of maintenance of the water system, amounted to the court's making a contract for the parties, which it had no power to do. There is no merit in this contention.

One seeking the aid of a court of equity must offer to do equity, and will be required by the court to do equity as a condition to granting of the relief sought. *United Cigarette Machine Co.* v. *Brown*, 119 Va. 813, 825, 89 S. E. 850, 855, L. R. A. 1917 F, 1100;

*Lindsey* v. *Clark,* 193 Va. 522, 527, 69 S. E. 2d 342, 345; 19 Am. Jur., Equity, § 463, pp. 319, 320; 30 C. J. S., Equity, § 91, p. 461.

Here Allen came into the court of equity seeking its aid to prevent High Knob from cutting off the water supply to his home, and both Allen and Roberson requested the court to require High Knob to comply with the oral agreements to supply them with a reasonable quantity of water needed for residential purposes, without cost to them other than the payment of a hook-on fee. Although the chancellor concluded from the evidence that High Knob was obligated under the oral agreements to furnish Allen and Roberson a reasonable supply of water, he recognized that there would be an expense in maintaining the water system and that it would not be just and equitable for them to receive water without paying their proportionate share of this expense. Thus, as a condition to granting the relief sought, the chancellor required Allen and Roberson to do equity and pay their proportionate shares of the maintenance costs, which was within his discretion where equity demands it. The action of the chancellor did not constitute the making of a contract for the parties. He merely required Allen and Roberson to do equity as a condition for obtaining the aid of the court of equity.

High Knob complains that the chancellor erred in refusing to define the phrase "a reasonable quantity of water," which it was required to furnish under his decree. The phrase "a reasonable quantity of water" here clearly means a reasonable quantity for residential needs. The appellant offered no evidence on the subject and the court was not called upon to define the phrase. Thus, appellant's contention is without merit.

For the reasons stated, the decree of the court below is

*Affirmed.*