## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Nuline Industries, Inc.

v.

Media General, Inc.

February 7, 1994

Case No. L93–375

BY JUDGE WILLIAM H. LEDBETTER, JR.

This case is before the court on the defendant's demurrer. The demurrer was argued on January 18, 1994, and counsel submitted memoranda on February 1, 1994.

It is well settled that a demurrer admits the truth of all factual matters well pleaded and all reasonable inferences fairly attributable to the allegations. Virginia Code § 8.01–273; *West Alexandria Properties v. First Virginia Mortgage*, 221 Va. 134 (1980). Therefore, the facts recited in this opinion are taken from the motion for judgment and the attachments to it.

For some years prior to 1988, Onduline, Inc., a subsidiary of Media General, Inc., the defendant, manufactured and sold roofing materials. Effective January 1, 1988, Media General sold the assets of Onduline, Inc., to Building Materials Marketing, Inc., predecessor to Nuline Industries, Inc., the plaintiff. The parties entered into an agreement whereby Building Materials Marketing, Inc. (now Nuline) would handle and resolve for Media General all warranty claims asserted by pre-1988 purchasers of Onduline products. The claims processing arrangement is governed by paragraph 17 of the parties' "asset sale and loan agreement." Pursuant to that paragraph, the claims processing fee to be paid by Media General to Nuline consists of two parts. First, Nuline is to be paid a fixed fee of $31,629.59 per month during the ten-year term of the agreement. Second, Nuline is to be paid a "variable" fee. For the first five years of the agreement (i.e., through December, 1992), the variable fee was $15,000.00 per month, with the

possibility that this fee could vary in amount under certain circumstances. For the second five years (i.e., January, 1993, to December, 1997), the agreement provides for a variable fee in "an amount to be mutually agreed upon in 1992."

Media General paid both fees to Nuline, as agreed, through 1992. Since then, Media General has paid the fixed fee but has paid no variable fee because the parties have not been able to reach agreement on the amount of the variable fee for the period January, 1993, through December, 1997. Nuline contends that Media General is in breach of the provisions of paragraph 17 of the agreement because Media General has refused to negotiate in good faith to establish a new variable fee for the remaining life of the agreement and because, of course, Media General has paid no variable fee as required in paragraph 17 of the agreement.

In Count I, Nuline asks the court to treat its pleading as a declaratory judgment action (Virginia Code § 8.01–184 et seq.) and to declare that Media General is obligated under paragraph 17 of the agreement to pay a variable fee "in an amount based upon the volume of claims processed, which amount shall be not less than $307.69 per claim." In Count II, Nuline asserts a claim ex contractu and seeks damages by reason of Media General's "failure to pay the . . . [variable fee] required in paragraph 17b(i) and its failure to negotiate in good faith to establish the amount of the . . . [variable fee] that is owed for the second five years of the agreement . . . ." In both counts, Nuline seeks the recovery of attorney's fees pursuant to paragraph 21(g) of the agreement.

In its demurrer, Media General asserts that both counts fail to allege a factual or legal basis for the relief sought. The premise of this assertion is that the clause in paragraph 17(b)(i) that sets the variable fee for the second five years at "an amount to be mutually agreed upon" is unenforceable, and, therefore, Nuline cannot recover in a contract action as a matter of law. In response, Nuline argues that the agreement is enforceable; that the issue is simply what the parties intended to use as a basis for setting the variable fee for the second five years; and that this intent can be ascertained by parol evidence and other well-settled ways by which meaning is supplied to ambiguous and uncertain contract terms. When this intent is thus ascertained, Nuline says, the trier of fact will be able to see that the parties meant to establish a variable

fee for the second five years based, at least in part, on the volume of new claims made.

As Nuline points out in its memorandum, Virginia courts are reluctant to declare a contract void for indefiniteness or lack of certainty. *High Knob, Inc. v. Allen*, 205 Va. 503 (1964). Nevertheless, there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances in order to have an enforceable contract.

An agreement to make an agreement fails because there is no mutual commitment. It imposes no obligation on the parties. It is too vague and indefinite to be enforced. See 17A Am. Jur. 2d, *Contracts*, § 35; 1 *Williston on Contracts* (3rd Ed.) § 45; and *Kay v. Professional Realty Corp.*, 222 Va. 348 (1981).

In *Allen v. Aetna Cas. & Surety*, 222 Va. 361 (1981), the plaintiff's motion for judgment alleged that Aetna had agreed to effect a full and final settlement with him for a medical malpractice claim in exchange for the plaintiff's promise not to retain counsel to prosecute the claim. The plaintiff alleged that Aetna breached the agreement. Aetna demurred, and the trial court sustained the demurrer and dismissed the action. In affirming, the Virginia Supreme Court held that an agreement to make a settlement, without specifying more, constitutes only an agreement to negotiate at a later day and is too vague and indefinite to be enforced.

Here, the parties merely agreed to "mutually agree" on the amount of the variable fee to be paid by Media General to Nuline during the second five years of the agreement. No sum, or range, was specified, nor was any method or formula alleged for determining the amount to be paid.

Nuline's argument that this contract provision can be enforced by "interpreting" it according to the intention of the parties which, in turn, can be ascertained by reference to what they agreed to do during the first five years is without merit. If the parties had intended to carry over their bargain regarding variable fees from the first five years to the second five years, there would have been no need for future negotiation of a new amount. If the parties had intended to continue with the same amount of variable fee, or to use the same formula or method for determining the fee, the "to be mutually agreed upon" clause makes no sense. Clearly, the parties intended to do, or at least to consider doing, something different. A court cannot determine the terms upon which the parties might ultimately agree.

Thus, Nuline's prayers for relief, based squarely upon interpretation and enforcement of paragraph 17 of the agreement, cannot be granted upon the facts alleged in the motion for judgment. Accordingly, the demurrer should be sustained.

Obviously, this is not to say that the entire contract is void. Although one part of the contract may be unenforceable because it is nothing more than an agreement to agree, the rest of the contract may be readily enforceable. 17A Am. Jur. 2d, *Contracts*, § 35. Here, the court's decision reaches only that part of the parties' contract that provides for a variable fee in "an amount to be mutually agreed upon" for the second five years.

Further, benefits conferred on one party under a contract void for indefiniteness may ordinarily be recoverable, although the appropriate remedy may be noncontractual. ALI, *Restatement of the Law of Contracts* 2d, § 34, comment d. Nuline's reliance on *Ricks v. Sumler*, 179 Va. 571 (1942), and other cases cited in its memorandum is misplaced.

Because both counts of the motion for judgment seek relief based upon the interpretation and enforcement of a contractual undertaking between these parties — specifically the provision for payment of a variable fee for claims processed during the second five years, contained in paragraph 17 of the asset sale and loan agreement — and because that provision is unenforceable on its face for the reasons explained above, the court is of the opinion that the demurrer should be sustained. Nuline will be granted leave to amend its motion for judgment. Nuline will be granted leave to amend its motion for judgment, if it be so advised, within twenty-one days from the date of the order.