# CIRCUIT COURT OF ESSEX COUNTY

Boy Blue, Inc.

 v.

Christopher Brown
and Joyce Hawkins

February 13, 2007

Case No. CL 005000076

BY JUDGE HARRY T. TALIAFERRO, III

Defendants Christopher Brown and Joyce Hawkins demur to Counts I through VIII of plaintiff's Motion for Judgment ("MFJ"). Three other defendants Zomba Recording, L.L.C., Zomba Enterprises, Inc., and Zomba US Holdings, Inc., were nonsuited by order entered April 18, 2006. There are two Count III's in the MFJ and no Count II. For the sake of clarity and brevity the first Count III will be referred to herein as Count II.

*Demurrer*

Upon consideration of a demurrer, the Court accepts all facts alleged in or reasonably inferable from the plaintiff's pleading to be true. The Court does not evaluate and decide the merits of a claim, it only tests the sufficiency of factual allegations to determine whether the plaintiff's pleadings state a cause of action. *West Alexandria Properties, Inc. v. First Va. Mtg. & Real Estate Inv. Trust*, 221 Va. 134, 267 S.E.2d 149 (1980); *Board of Supvrs. v. Southland Corp.*, 224 Va. 514, 297 S.E.2d 718 (1982). The documents attached to the motion for judgment as exhibits are part of plaintiff's pleadings to be considered in the motion before the Court. Rule 1:4(i). All demurrers shall state specifically the grounds on which the demurrant concludes that the pleading is insufficient at law. No grounds other than those stated specifically in the demurrer shall be considered by the court. Va. Code § 8.01-273. In this hearing, the Court considers only the grounds specifically stated in the Demurrer and defendants' Memorandum of Law in Support of their Demurrer ("the Memo" or "Memo").

*Allegations in Plaintiff's Motion for Judgment*

Boy Blue, Inc. ("Boy Blue") is a business which represents performing artists in the entertainment field. (MFJ ¶ 7.) On March 11, 2002, Hawkins, individually and as mother and legal guardian of Brown, entered into a Fee Assignment Agreement ("FA") with Boy Blue. (MFJ ¶¶ 8 and 35; Exhibit A.) Under the FA, Hawkins agreed during Brown's minority to relinquish all of Brown's earnings to Boy Blue, to pay all of Boy Blue's fees, costs, and expenses and not to interfere with the rights of Boy Blue and gave Boy Blue power of attorney to direct the financial and professional affairs of Brown all as provided under a separate Management Agreement. (MFJ ¶¶ 8, 9, 10, 11, and 12; Exhibit A.) On March 12, 2002, Brown and Hawkins entered into an Exclusive Artist Management Agreement ("the MA") with Boy Blue Productions. (MFJ ¶ 14; Exhibit B.) The parties agreed that Boy Blue would be paid compensation based on Brown's "gross income," but the MA inadvertently omitted the "percentage term" of such compensation. (MFJ ¶ 15.) The MA provided for an initial and four automatic renewal terms of one year each. (MFJ ¶ 16.) From May to August, 2002, Boy Blue provided services under the MA which Brown and Hawkins accepted and from which they benefited. (MFJ ¶ 18.) Boy Blue alleges in Count V that it provided services and incurred costs on defendant's behalf from March 2002 to November 2003. (MFJ ¶¶ 69 and 70.) In September 2002, Boy Blue

experienced difficulty contacting the defendants who subsequently advised Boy Blue that Brown was uncertain about pursuing his career as a performing artist. (MFJ ¶¶ 19 and 20.) Thereafter, Brown and Hawkins together actively sought representation by other agents without consulting Boy Blue. (MFJ ¶¶ 23, 24, and 25.) The defendants signed with another company and, by written notice, Brown disaffirmed the MA effective as of December 1, 2004. (MFJ ¶¶ 26, 27, 28, 29, and 30.) In the summer of 2005, Boy Blue learned of Brown's new contract and of the defendants' negotiations with other companies. (MFJ ¶ 31.) Brown and Hawkins have paid no compensation to Boy Blue in any amount. (MFJ ¶ 32.)

## Boy Blue's Claims

The eight counts of Boy Blue's MFJ seek compensatory and punitive damages together with reasonable attorney's fees, interest, and costs from either Brown or Hawkins or both for Breach of Express Contract (Counts I, II, and IV), Breach of Implied Contract (Counts III and V), Quantum Meruit (Count VI), Conspiracy to Injure Trade, Business, or Profession (Count VII), Tortious Interference with Contract (Count VIII).

## Grounds of Demurrer

Defendants seek dismissal of Counts I, II, IV, VII, and VIII of the MFJ on the grounds that the FA and MA lack any definite compensation term, the MA constitutes a contract of adhesion, and Brown as a minor lacked the capacity to execute the MA. Defendants further seek dismissal of Counts III, V, and VI for failure to specifically allege services for which plaintiff seeks compensation and of Count VIII for failure to allege illegal or improper conduct and because Brown cannot tortiously interfere with his own agent, namely Hawkins, who acted as such in entering into the FA.

## Analysis

A. *Demurrer to All Counts Alleging Breach of Express Contract or Which Rely upon There Being an Express Contract (Counts I, II, IV, VII, VIII)*

1. *Lack of a Definite Compensation Term*

(a) *Applicability of Parol Evidence Rule*

A contract with an incomplete, uncertain, or indefinite material term will not be enforced. The compensation or price to be paid is a material term which must be either explicitly stated or some provision in the contract must contain a sufficiently specific method for determining the amount. See *Mullins v. Mingo Lime & Lumber*, 176 Va. 44, 10 S.E.2d 492 (1940); *Parker v. Murphy*, 152 Va. 173, 183, 146 S.E. 254, 257 (1929); *Premier Signatures International, Inc. v. Feld Entertainment Productions, Inc.*, 1999 U.S. App. (4th Cir.) LEXIS 14028.

The MA[1] in Paragraph 4, *Compensation*, states as follows:

> In consideration of Company entering into this Agreement, and as compensation for the services to be rendered to me by Company hereunder, I agree to compensate Company, as and when received by me or applied to my behalf, a sum equal to [ *blank* ] of all and any "gross compensation" which I may receive. . . .

Boy Blue alleges that an agreed upon "percentage term" was inadvertently omitted from the above paragraph and argues that such term can be proved by testimony at trial. Defendants' contend such testimony is barred by the parol evidence rule.

The parol evidence rule bars the use of prior or contemporaneous oral negotiations or stipulations to alter, vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional written agreement. See *Walker & Laberge Co. v. First Nat'l Bank of Boston*, 206 Va. 683, 146 S.E.2d 239 (1966). Such an agreement is considered to be the complete or integrated understanding of the parties, and it is deemed "that the writing contains the whole contract and is the sole evidence of the agreement." *Durham v. National Pool Equip. Co.*, 205 Va. 441, 446, 138 S.E.2d 55, 59 (1964).

Defendants rely significantly on the opinion of Judge Ledbetter in *Lanier, Inc. v. Pagan*, 45 Va. Cir. 258 (Spotsylvania Co. 1998), which sustained defendant property owners' demurrer upon a finding that plaintiff contractor Lanier's written proposal to remodel defendants' farmhouse was an unenforceable incomplete contract because absolutely nothing in it described services to be performed, materials to be furnished, or type of construction to be done.

---

[1] The FA does not contain any provision about how compensation is determined other than to refer to what Boy Blue is to receive under the MA.

8

Lanier argued that a definite description of the missing term of services to be performed could be developed at trial, contending evidence of such was admissible under the collateral contract doctrine exception to the parol evidence rule. This exception permits "parol proof of a prior or contemporaneous oral agreement that is independent of, collateral to, and not inconsistent with the written contract and which would not ordinarily be expected to be embodied in the writing." *High Knob, Inc. v. Allen*, 205 Va. 503, 506, 138 S.E.2d 49 (1964) (testimony of oral agreement regarding connection to water system not barred by parol evidence rule because it involved a different subject from parties' written contract for purchase of subdivision lots). Suing on the written proposal, Lanier made no allegation of a collateral oral contract in its pleadings. There were no specifications or plans as called for in the proposal. While it was reasonable in *High Knob* for a different, but related subject to be dealt with separately, Judge Ledbetter in *Lanier* found it out of the ordinary to expect the services to be performed to be in an independent collateral agreement. As thus reasoned, the parol evidence rule was held to bar the testimony Lanier wanted. In our case, we agree with defendants that the collateral contract doctrine does not apply. Where a "fill in the blank" space has been left blank, it does not stand to reason that the parties would have addressed two or three missing words in a separate collateral contract.

Defendants state that the only exception to the parol evidence rule is the collateral contract doctrine. (Defendants' Reply Memorandum p. 2.) The Court disagrees. Defendants do not address a second exception to the parol evidence rule, the partial integration doctrine which holds that, where it is apparent from the face of the instrument itself that there are other terms not included in the written instrument, parol evidence of the missing terms may be supplied to establish the entire contract. See Friend, *The Law of Evidence in Virginia*, § 20-3 (6th ed. 2003). "[I]t is . . . elementary that the [parol evidence] rule does not apply where the writing on its face. . . . does not embody the entire agreement. In such a case, parol evidence is always admissible, not to contradict or vary the terms, but to establish the real contract between the parties." *Prospect Dev. Co. v. Bershader*, 258 Va. 75, 84, 515 S.E.2d 291, 296 (1999).

Plaintiff's allegation of a failure to fill in a blank space is not a claim of collateral contract, but rather is a claim of an omission of words agreed upon but mistakenly omitted when the MA was executed. Evidence of such may not be offered for contradiction or variance of other written terms, but may be offered to establish the real contract intended by the parties. See *Durham*, 205 Va. at 441.

Both *Mullins* and *Premier* cited above upheld trial court findings that agreements were unenforceable because compensation was not definitely agreed upon at the time the agreements were made and there was no other way by which compensation could be definitely determined. In *Parker*, while the contract (really an option) failed to state a price when the bargain was struck, the writing along with the conduct of the parties did provide a mode of determining the price at the time of exercise of the option. Our case is distinguishable because plaintiff alleges the term of compensation was agreed upon when the MA was signed.

Brown and Hawkins also argue that the merger clause in the MA bars the use of parol evidence. MA paragraph 18, *Entire Understanding*, states as follows:

> This agreement is the only agreement between the parties with respect to the subject matter hereof and represents the entire understanding of the parties hereto. There are no other agreements, oral or written, between the parties in any manner relating to the subject matter hereof. This agreement may be modified or amended only by a written document signed by both parties hereof.

Under the partial integration doctrine, the use of parol evidence to establish the omitted percentage term does not do violence to this clause. Boy Blue alleges the omission of an agreed upon part of the MA, it does not seek to show another agreement between the parties nor does it seek to modify or amend the parties' agreement. It seeks to show only the real bargain the parties had when they entered into the MA.

### (b) *Failure to Allege the Percent of the Percentage Term*

Defendants demur also on the ground that the MFJ fails because plaintiff does not allege the agreed upon percent of Brown's gross income Boy Blue claims as compensation. The Court agrees that the MFJ fails in this respect to sufficiently state a claim. For the MA to be enforceable, the compensation term must be definite. Defendants ought not to have to guess at the material term of compensation they allegedly agreed to in an express contract.

The Court finds that whether an agreed upon percentage term was inadvertently omitted from the executed MA is a factual issue to be determined at trial. We agree with the defendants, however, that to state a claim for breach of such a term in an express contract plaintiff must allege the percent of gross income it claims.

## 2. *Unenforceability of MA as Contract of Adhesion*

While an agreement may be unconscionable on its face, here, as argued by defendants, unconscionability is an issue of fact. Defendants assert Brown was only twelve years old when he signed the MA, Hawkins had only a high school education, and that the bargaining power of the parties was uneven. All of these contentions rest on assertion of facts not pleaded in the MFJ which are not proper for consideration in a demurrer.

Defendants' argue certain provisions in the MA as examples of the one sidedness of the MA and the disparity between the comparative weight of duties of Brown versus the lack of affirmative obligations of Boy Blue. Upon such characterizations, defendants would have the Court find the MA intrinsically unfair and unenforceable. The elements of the test of unconscionability are set out in *Smyth Bros. v. Beresford*, 128 Va. 137, 104 S.E. 371 (1920), a case cited in *Management Enterprises, Inc. v. Thorncroft Co.*, 243 Va. 469, 416 S.E.2d 229 (1992). The Court finds the resolution of these issues necessarily involves hearing and weighing evidence and cannot be resolved by demurrer.

## 3. *Incapacity of Brown to Execute a Valid Binding Contract*

Generally, the contract of an infant is not void, only voidable by the infant upon attaining the age of majority. Where an executory contract is involved, however, the minor may avoid at any time. See 9B M.J., *Infants*, § 8. A disaffirmance avoids the infant's contract *ab initio*, and the parties revert to the same situation as if the contract had never been made. The right of an infant to void his contract is an absolute and paramount right, superior to all equities of other persons. He who deals with an infant deals at his peril and subject to this right of the infant to disaffirm and avoid the contract. See *Mustard v. Wohlford*, 56 Va. (15 Gratt.) 329 (1859). See also 9B M.J., *Infants*, §§ 6, 7, 8, and 9. It is an exception to this rule that contracts for necessaries, generally food, appropriate clothing, and shelter, made by infants cannot be avoided on the grounds of infancy. *Zelnick v. Adams*, 263 Va. 601, 561 S.E.2d 711 (2002).

Brown was a minor when he executed the MA on March 12, 2002, and when he disaffirmed it in writing on December 1, 2004. (See MFJ ¶ 2.) The Court agrees the MFJ states no cause of action against Brown for breach of the MA based on his signing and disaffirming such document.

### 4. *Express Contract between Hawkins and Boy Blue*

Hawkins, as custodial parent of her minor child Brown, is entitled by law to his services and earnings, such entitlement being reciprocal to her parental duty to support her unemancipated child. *Brumsfield v. Brumsfield*, 194 Va. 577, 74 S.E. 2d 170 (1953) (emancipation of child confers on child the rights to own earnings and terminates parental legal obligation of support). Boy Blue argues the MA is enforceable against Hawkins because she signed it and that, in any event, under the FA, Hawkins agreed to be a party to the MA, relinquishing her rights in Brown's earnings and assigned those rights to Boy Blue. Defendants deny Hawkins is a party to the MA because she signed it and assert the FA is of no effect because it depends on the MA which itself is unenforceable.

Boy Blue argues that, even if the MA is unenforceable against Brown, the FA is enforceable as a stand alone agreement because of Hawkins' rights to Brown's earnings. The Court does not agree that this is necessarily correct. For example, the FA has no self-contained compensation provision. It only references the compensation provision in the MA. If the MA is not enforceable for lack of a valid compensation provision, the assignment of Brown's earnings to Boy Blue under the FA likewise fails and the FA is unenforceable. The same result occurs if the MA is held invalid as a contract of adhesion.

The MA on its face is an "Exclusive Artist Management Agreement" by and between Boy Blue and Brown, its only two named parties. Brown signed on the signature line for "artist signature." There is another signature line for Boy Blue by its "authorized signatory." Hawkins signed on this line. The MA was not signed by Boy Blue. It contains no other signature lines or signatures. (See MFJ, Exhibit B.) The MA sets out no right or duty or covenant relating to Hawkins. The MA by its own terms is only to be entered into by two competent parties. (See, for e.g. MFJ Exhibit B ¶ 7(h).)

While Boy Blue's agreements under the FA and MA are with different parties they bear a close relationship because the provisions in the FA specifically relate to the MA and Hawkins, a party to the FA, is the mother of Brown, a party to the MA.

Plaintiff cites one case involving a personal management contract for a child entertainer, *Herig v. Akerman, Senterfitt & Edison, P.A.*, 741 So. 2d 591 (Fla. App. 1999), a decision of the Court of Appeals of Florida, 1st District, as holding that "the management agreement [for the minor] was enforceable." (Memorandum in Opposition to Defendants' Demurrer p. 6.) The Court disagrees this was the holding.

While the Court of Appeals in *Herig* recognized the right of parents of a minor child to assign the child's earnings and in principle recognized the validity of a contract for that purpose, the contract in the Florida case was held invalid. Herig, a talent management firm, entered into a contract with the parents of a minor child to manage his career as a performing artist. Some years after the contract was executed, a legal guardian appointed for the child voided the contract. Herig sued the guardian, the child, and the parents, seeking a declaration that the contract was valid. Summary judgment in favor of the defendants was entered on the grounds that a contract entered into on the minor's behalf by his parents, not approved by the court, was voidable at the election of the minor. Herig then sued its ex-attorney for legal malpractice alleging he failed to advise that, to prevent the contract being voided, a legal guardian needed to be appointed and court approval obtained for the agreement. Herig lost the second suit also on summary judgment and appealed. The Florida Court of Appeals found that because the defendant attorney in good faith made a diligent inquiry on a fairly debatable point in an unsettled area of the law, he had not committed malpractice in advising his client and drafting the contract.

*Herig* is of little assistance. Defendants argue the FA is "nothing more than Hawkins, Brown's legal guardian, authorizing Boy Blue to enter into the MA and agreeing that Boy Blue is entitled to the rights under the MA." (Memo p. 9.) The Court disagrees for purposes of a demurrer that the claims under the FA and MA are so easily dismissed. Plaintiff alleges Hawkins hired Boy Blue to manage Brown. (MFJ ¶ 36.) In the FA, Hawkins agreed Boy Blue's "activities" under the MA are necessary to the development of Brown's professional career. Hawkins agreed in the FA that, for so long as she was entitled to Brown's services and earnings, "I shall be deemed to be party [to the MA]." She assigned Brown's earnings to Boy Blue, granted a Special Power of Attorney to Boy Blue to act as she could in the name of Brown, and ratified and indemnified Boy Blue's acts under the MA, particularly for the purpose of Boy Blue receiving its fees. (MFJ, Exhibit A.)

This Court would sustain a demurrer on the ground that just signing the MA did not make Hawkins a party to it. This does not preclude, however, additional consideration by the fact finder of the effect of Hawkins' agreement with Boy Blue in the FA. It could be inferred that Hawkins' intention in the FA was, as carried out by exercise of her parental right to the services and earnings of Brown, to hire Boy Blue herself to manage Brown's career and to assign Brown's earnings to Boy Blue. (MFJ ¶¶ 35, 36, and 38.)

The cardinal rule in the construction of a contract is that the intention of the parties governs. *Bender-Miller Co. v. Thomwood Farms, Inc.*, 211 Va. 585, 179 S.E.2d 636 (1971). While the Court will not admit parol evidence to alter, vary, contradict, add to, or explain the terms of the written agreement to determine the intention of the parties, the Court may consider the subject matter of the contract, the circumstances surrounding its execution, and the purpose of the parties in making it. See 4A M.J., *Contracts*, §§ 44, 46. See also, Friend, *The Law of Evidence in Virginia*, "Parol Evidence Rule," § 20-1 (Sixth Edition).

The Court finds that whether there is a cause of action against Hawkins for breach of express contract as alleged in Count I of the MFJ is not a matter which can be decided upon demurrer based on the specific grounds stated by defendants. The demurrer to Count IV is sustained.

**B.** *Demurrer to Claims against Hawkins and Brown Relating to Breach of Implied Contract in Fact or at Law (Counts III and V) and Claim of Quantum Meruit (Count VI)*

Plaintiff pleads in the alternative that, should the Court find there is no express contract between the parties, the plaintiff should still be allowed to recover on theories of implied contract (MFJ ¶¶ 53, 68) or quantum meruit (MFJ ¶¶ 73-78). The only grounds stated by defendants in their Demurrer and Memo for the failure of plaintiff to state a cause of action on any of these claims is the lack of any allegation of what services Boy Blue performed for the benefit of Brown and Hawkins.

*1. Implied Contract in Fact or at Law*

Contracts are express when their terms are stated by the parties. Where an express contract between the parties is in existence it excludes an implied contract covering the same subject matter. A contract implied in fact requires a meeting of the minds based on a presupposition of a mutually agreed obligation and intent to promise even though such agreement and promise have not been expressed in words. A contract implied in law (sometimes referred to as a "quasi contractual" obligation) is imposed by law for the purpose of bringing about justice by avoidance of unjust enrichment and may be imposed even though no intention of the parties to bind themselves can be discerned. A contract implied in law is really not a contract, but an equitable concept applied only in the absence of an express contract or contract implied in fact and then only when it would be unfair for the recipient to keep a benefit without paying for it. See 4A M.J., *Contracts*, § 99.

14

Boy Blue has pleaded that it provided marketing production and management in the entertainment field for the benefit of Brown and Hawkins. In order to withstand demurrer, notice pleading requires only allegations sufficient to inform defendants of the nature and character of the claim being made without the necessity of having to provide details. See *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993). Plaintiff has alleged in its implied contract claims that defendants requested, were provided, and accepted the types of services which were part and parcel of the events alleged in the MFJ. The nature and extent of the matters alleged in the MFJ are sufficient to withstand defendants' demurrer to plaintiff's claim of an implied contract in fact or at law.

### 2. *Quantum Meruit*

Quantum meruit is a measure of damages to be applied when a contract to pay for services rendered has been implied. It does not apply to an action for breach of an express contract. It requires the defendant to pay the reasonable value of the services considering the nature of the work and customary rate of pay. See *Marine Dev. Corp. v. Rodak*, 225 Va. 137, 300 S.E.2d 763 (1983).

Defendants cite *Premier, supra*, as authority that quantum meruit damages for breach of an implied contract do not lie where plaintiff has not shown it performed some service on defendants' behalf for which plaintiff is entitled to compensation. While the Court agrees that this is substantively correct, *Premier* involved the appeal of a summary judgment, not a demurrer. Summary judgment requires that there be no material fact genuinely in dispute, a standard different from a demurrer where the all facts properly pleaded are taken as true. Plaintiff in *Premier* claimed it was owed a commission for the renewal of a corporate sponsorship of a circus owned by defendant. The trial court dismissed plaintiff's claim of quantum meruit. In sustaining the summary judgment, the Fourth Circuit citing *Hendrickson v. Meredith*, 161 Va. 193, 170 S.E. 602 (1933), held plaintiff had no entitlement to quantum meruit where it was undisputed that plaintiff performed no service whatsoever in connection with the sponsorship renewal. In considering a demurrer, as we do here, the Court must take as true Boy Blue's factual allegations that it did perform services in the entertainment field benefiting defendants and entitling plaintiff to just compensation.

As in Section B.1 above, we find plaintiff has sufficiently alleged services provided to withstand defendants' Demurrer to a claim of quantum meruit.

*C. Demurrer to Claim against Brown and Hawkins for Conspiracy to Injure Boy Blue in Its Business (Count VII)*

Defendants in their Demurrer and Memo state that plaintiff has failed to state a claim for conspiracy because no such claim can be based upon a breach of the MA or FA because such agreements are unenforceable because of the lack of a valid compensation term, the MA is a contract of adhesion, and Brown was a minor when he signed and disaffirmed the MA. Defendants again argue the FA merely relates back to the MA and, because the latter is unenforceable, so is the FA.

The Court ruled on these issues previously in this letter. The Court has found that plaintiff's alleged claim of breach of an express contract against Hawkins has survived Defendants' demurrer. Although the Court determined that the MA was not enforceable against Brown due to his minority, he may still be liable under a tort claim for conspiracy, as may Hawkins, to injure the trade, business, or profession of Boy Blue. The Virginia Supreme Court case of *Worrie v. Boze*, 198 Va. 533, 95 S.E.2d 192 (1956), has a factual similarity to our own. The case involved an Arthur Murray Dance Studio operated by the plaintiff Boze. The plaintiff had separate written employment contracts with non-compete clauses with the defendants Worrie and Bailey. When the contracts of employment were terminated, the two defendants opened a competing dancing school. The plaintiff Boze filed a chancery action against both defendants seeking to enjoin them from violating the non-compete clauses. Worrie was enjoined from violating the terms of his contract, but, on a plea of infancy, the bill was dismissed as to Bailey. Subsequently, the plaintiff Boze brought a lawsuit against both defendants for willfully and wrongfully conspiring to breach the contract which Worrie had entered into with the plaintiffs. A judgment for compensatory and punitive damages in favor of the plaintiff Boze was entered against both defendants.

Upon appeal, the Supreme Court rejected Worrie's argument that he could not be held liable for conspiring to breach his own contract and even though Bailey's contract was not enforceable against him, the trial court's judgment that Bailey and Worrie were jointly and severally liable for conspiring to breach Worrie's contract with the plaintiff Boze was affirmed.

Upon such authority, Count VII withstands defendants' demurrer. Although the Zomba defendants are named as conspirators in Count VII, they have been nonsuited from the case.

**D.** *Demurrer to Claim against Brown for Tortiously Interfering with the FA (Count VIII)*

### 1. *Breach of Express Contract*

Defendants state in their Demurrer and Memo that plaintiff fails to state a claim for tortious interference with the FA, an express contract, upon the same grounds stated in Section A. 1, 2, 3, and 4 above. These matters have been addressed immediately above and will not be addressed again in detail. Although the MA is unenforceable against Brown, he may still bear tort liability for tortious interference if Hawkins is found to have a valid express contract with Boy Blue.

### 2. *Failure to Allege Illegal or Improper Conduct*

Defendants state as an additional ground in their Demurrer and Memo that Boy Blue failed to allege illegal or improper conduct by Brown necessary to establish tortious interference with the FA. Brown, as an unemancipated minor, had an absolute right to void the MA. Insofar as Brown is concerned, the MA was terminable at will. The four elements of a *prima facie* cause of action for tortious interference with a contract not terminable at will are set forth in ¶¶ 85-90 of the MFJ. *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985). A contract terminable at will, however, has been recognized under Virginia law as containing a fifth element, namely, that the defendant used improper means or methods to intentionally interfere with the contract expectancy, prospective business relationships, and economic advantage of the plaintiff. *Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*, 254 Va. 408, 414, 493 S.E.2d 375, 378 (1997). Some allegation of illegal or improper conduct would have to be alleged by plaintiff in order for the claim of tortious interference to withstand a demurrer.

### 3. *Brown and Hawkins as Principal and Agent*

Defendants cite *Fox v. Desse*, 234 Va. 412, 362 S.E.2d 699 (1987) (no principal and agent relationship existed among defendants who all acted in their capacity as municipal employees), as authority that a principal and agent cannot tortiously interfere with a contract for acts within the scope of their agency relationship. Defendants characterize Hawkins as the agent and Brown as her principal. The appointment of an agent by a minor is void. *Mustard*, 56 Va. (15 Gratt.), at 836. A minor lacking capacity himself cannot confer on an

agent the ability to do what he cannot do himself. As alleged by plaintiff, Hawkins' authority to act contractually in matters involving Brown arose not from his appointment of her as his agent, but from her own legal right as a parent to the services and earnings of her minor child. The Court finds that the agency relationship as alleged between Brown as principal and Hawkins as agent is not a sufficient ground to support defendants' demurrer to Count VIII of the MFJ.

## Conclusion

Based upon the foregoing analysis, the Court holds as follows:

Count I: *Breach of Express Contract (FA) against Hawkins*: Defendants' Demurrer is overruled, except the Demurrer based on the failure of plaintiff to allege the specific percent of Brown's gross income which it claims as compensation is sustained; leave is granted plaintiff to amend Paragraph 15 of the MFJ to allege the specific percent claimed;

Count II: *Breach of Express Contract (MA) against Brown*: Defendants' Demurrer is sustained; leave is granted plaintiff to amend Count II, if it be so advised;

Count III: *Breach of Implied Contract in Fact against Hawkins and Brown*: Defendants' Demurrer is overruled;

Count IV: *Breach of Express Contract (MA) against Hawkins*: Defendants' Demurrer is sustained; leave is granted plaintiff to amend Count IV, if it be so advised;Count V: *Breach of Implied Contract at Law against Brown and Hawkins*: Defendants' Demurrer is overruled;

Count VI: *Quantum Meruit against Brown and Hawkins*: Defendants' Demurrer is overruled;

Count VII: *Conspiracy to Injure Trade or Business against Brown and Hawkins*: Defendants' Demurrer is overruled, except the Demurrer based on the failure of plaintiff to allege the specific percent of Brown's gross income which it claims as compensation is sustained; leave is granted plaintiff to amend paragraph 15 of the MFJ to allege the specific percent claimed;

Count VIII: *Tortious Interference against Brown*: Defendants' Demurrer is overruled, except (1) the Demurrer based on the failure of plaintiff to allege the specific percent of Brown's gross income which it claims as compensation and (2) the Demurrer based upon the failure to allege illegal or improper conduct on the part of Brown are sustained; leave is granted plaintiff to amend paragraph 15 of the MFJ to allege the specific percent claimed and to amend Count VIII to allege illegal or improper conduct, if it be so advised.

18

Plaintiff shall have twenty-one days from the date of entry of the Order to file such amended pleadings herein as it may be advised. Defendants shall have twenty-one days to file such responsive pleadings to plaintiff's amended pleadings as they shall be advised.