PRESENT: All the Justices

ROBERT J. ZELNICK

OPINION BY
v.  Record No. 011390          JUSTICE DONALD W. LEMONS
                               April 19, 2002
JONATHAN RAY ADAMS

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Thomas A. Fortkort, Judge Designate

In this appeal, we consider whether a contract for legal services entered into on behalf of a minor is voidable upon a plea of infancy or subject to enforcement as an implied contract for necessaries and, if enforceable, the basis for determining value of services rendered.

## I.  Facts and Proceedings Below

Jonathan Ray Adams ("Jonathan") was born on April 5, 1980, the natural child of Mildred A. Adams ("Adams" or "mother") and Cecil D. Hylton, Jr. ("Hylton" or "father").  Jonathan's parents were never married to each other.  On September 8, 1995, after highly contested litigation, an agreed order ("paternity order") was entered in Dade County, Florida, establishing Hylton's paternity of Jonathan.

Jonathan's grandfather, Cecil D. Hylton, Sr. ("Hylton Sr."), died testate on August 25, 1989.  His will established certain trusts and provided that the trustees had sole discretion to determine who qualified as "issue" under the will.

Specifically, Fourteenth section of the will provided the following:

> D. . . . I DIRECT that in the case of any person claiming that a particular individual was born out of wedlock to a descendant of mine, and thus is an issue of mine for purposes of this, my Will, the decision of my Executors, or, as the case may be, my Trustees, as to whether such individual is an "issue" of mine shall be conclusive and binding and not subject to question by any person or court.

The will created two separate trusts for Hylton Sr.'s grandchildren: the First Grandchildren's Charitable Trust and the Second Grandchildren's Charitable Trust ("the trusts"). Hylton Sr.'s grandchildren and great grandchildren would potentially receive distributions from the trusts in the years 2014 and 2021.

As subsequent testimony in litigation revealed, the amount of the potential distributions from the trusts cannot be determined at this time. This uncertainty is due to the possibility of a diminishing corpus and the possibility that the number of beneficiaries could change before the dates of distributions.

On July 11, 1996, Adams met with an attorney, Robert J. Zelnick ("Zelnick"), about protecting Jonathan's interest as a beneficiary of the trusts. She had received information leading her to believe that distributions were being made from the

trusts to some of Hylton Sr.'s grandchildren.  Adams told Zelnick that she contacted Jonathan's father about these alleged distributions, but she had not received a response from him. Adams explained that she had also contacted the law firm that had prepared Hylton Sr.'s will and the trustees, and no one would provide her any information about the distributions or whether the Estate would recognize Jonathan as a beneficiary. During the meeting, Adams gave Zelnick a copy of the Florida paternity order.

Adams explained that she could not afford to pay Zelnick's hourly fee and requested legal services on her son's behalf on a contingency fee basis.  At the conclusion of the meeting, Zelnick told Adams that he was unsure whether he would take the case, but that he would investigate the matter.

Zelnick next spoke with Adams during a telephone conversation on July 18, 1996.  He informed her that he had obtained a copy of the will and reviewed it, and that he was willing to accept the case "to help her have Jonathan declared a beneficiary of the estate."  Adams went to Zelnick's office the next day, July 19, 1996, where Zelnick explained that the gross amount of the estate was very large.  According to Zelnick, he "wanted to make sure that she had some understanding of the size of the estate before she entered into this agreement."  He further explained that, due to the contingency nature of the

3

agreement, it was impossible to know the ultimate amount of his fee.  On July 19, 1996, Adams signed a retainer agreement ("the contract") for Zelnick's firm to represent Jonathan on a one-third contingency fee basis "in his claim against the estate of Cecil D. Hylton."

On November 8, 1996, Zelnick sent a letter to the co-executors of the Estate, wherein he mentioned the Florida paternity order and demanded that the co-executors "recognize and acknowledge Jonathan Ray Adams as 'issue' and the grandchild of Cecil D. Hylton, Sr. for purposes of his will and trusts created thereunder."  After receiving no response to the November letter, Zelnick sent another letter dated December 9, 1996, making further inquiry.  Zelnick received a response from counsel for the Estate, Howard M. Zaritsky ("Zaritsky"), dated December 13, 1996.  In the letter, Zaritsky outlined the four trusts created under Hylton Sr.'s will and stated:

> The trustees of all four trusts are aware of your November 8 letter and of the court order to which you have referred.  I have advised them that, as soon as any amount is to be paid to Mr. Hylton's grandchildren, or to the children of Cecil D. Hylton, Jr., they should carefully evaluate the merits of your client's claim.
>
> Until then, I believe that the matter is not yet ripe for determination, either by my clients or by the courts.

In May 1997, Zelnick filed a bill of complaint for declaratory judgment, accounting and other relief on Jonathan's behalf to have Jonathan recognized as the grandchild and "issue" of Hylton Sr. for the purposes of the will and trusts. Zelnick subsequently filed an amended bill of complaint, naming as defendants all of the potential beneficiaries under the will and trusts. A consent decree was entered on January 23, 1998, which ordered that Jonathan was "declared to be the grandchild and issue of Cecil D. Hylton" and was "entitled to all bequests, devises, distributions and benefits under the Last Will and Testament of Cecil D. Hylton and the trusts created thereunder that inure to the benefit of the grandchildren and issue of Cecil D. Hylton."

In March 1998, Jonathan's father brought a bill of complaint for declaratory judgment against Adams and Zelnick, on Jonathan's behalf, to have the contract with Zelnick declared void. Upon reaching the age of majority, Jonathan filed a petition to intervene, wherein he disaffirmed the contract. Jonathan was substituted for his father and subsequently filed an amended bill of complaint for declaratory judgment against Zelnick, wherein he again disaffirmed the contract and asked that the trial court declare the contract void.

On April 6, 2000, Jonathan filed a motion for summary judgment. He asserted that the contract was "void as a matter

5

of law" because it was not a contract for necessaries.  Jonathan argued that the 1997 suit was unnecessary due to the Florida paternity decree which conclusively established Hylton's paternity.  He further argued that the 1997 suit was unnecessary because the trusts could not distribute any funds until the years 2014 and 2021 and the issue was not "ripe for determination."  Finally, Jonathan claimed that the contingency fee agreement was unreasonable.

The trial court granted Jonathan's motion for summary judgment and ruled that the contingency fee agreement was void.  The trial court held that the contract was not binding on Jonathan because he was "in his minority" when the contract was executed.  Furthermore, according to the trial court, the doctrine of necessaries did not apply to the contract "because the matter could have been adjudicated after the majority of [Jonathan], who was within a few years of his majority at the time that all of this came out."

Nonetheless, the trial court held that Zelnick was entitled to a fee under the theory of quantum meruit.  Jonathan objected, arguing that Zelnick did not affirmatively request such relief in either of his answers to the bill of complaint.  The trial court heard evidence from Zelnick about the amount of time he spent on Jonathan's case and his assessment of the risks involved.  Zelnick testified that he spent approximately 150 to

6

200 hours on the case, and that in 1996-1997, his hourly rate was $200 an hour.  At the close of the evidence, the trial court stated:

> The case here involves substantial amounts of money and a substantial benefit to this young man.  Until he got that consent decree he was the outsider looking in on this trust.  And while I might have agreed that a contingent fee may have been overreaching, I still think that the work [Zelnick] did was extremely valuable to this young man and it should be rewarded at least to some extent.

The trial court entered judgment in favor of Zelnick in the amount of $60,000, with prejudgment interest as of January 23, 1998, and on March 20, 2001, an order was entered memorializing the rulings.  Both Zelnick and Jonathan have appealed the judgment of the trial court.  Zelnick's appeal is resolved in this opinion.  Jonathan's appeal is resolved by order entered this day.

## II.  Analysis

In this appeal, Zelnick argues that the trial court erred in finding that the contract entered into on a minor's behalf by his mother was not a contract for necessaries.  He further argues that the trial court erred in finding that the contingency contract was unreasonable.  In response, Jonathan maintains that the trial court did not err in holding that the contract was void and was not a contract for necessaries.  He

7

further argues that the contingent fee contract was "patently unreasonable."

Under well and long-established Virginia law, a contract with an infant is not void, only voidable by the infant upon attaining the age of majority.  Mustard v. Wohlford's Heirs, 56 Va. (15 Gratt.) 329, 337 (1859).  This oft-cited rule is subject to the relief provided by the doctrine of necessaries which received thorough analysis in the case of Bear's Adm'x v. Bear, 131 Va. 447, 109 S.E. 313 (1921).

In Bear, we explained that when a court is faced with a defense of infancy, the court has the initial duty to determine, as a matter of law, whether the "things supplied" to the infant under a contract may fall within the general class of necessaries.  Id. at 454, 109 S.E. at 316.  The court must further decide whether there is sufficient evidence to allow the finder of fact to determine whether the "things supplied" were in fact necessary in the instant case.  Id.  If either of these preliminary inquiries is answered in the negative, the party who provided the goods or services to the infant under the disaffirmed contract cannot recover.  Id.  If the preliminary inquiries are answered in the affirmative, then the finder of fact must decide, under all the circumstances, whether the "things supplied" were actually necessary to the "position and condition of the infant."  Id.  If so, the party who provided

8

the goods or services to the infant is entitled to the "reasonable value" of the things furnished.  In contracts for necessaries, an infant is not bound on the express contract, but rather is bound under an implied contract to pay what the goods or services furnished were reasonably worth.  Id. at 450, 454, 109 S.E. at 314, 316.

"[T]hings supplied," which fall into the class of necessaries, include "board, clothing and education."  Gayle v. Hayes' Adm'r, 79 Va. 542, 546 (1884).  Things that are "necessary to [an infant's] subsistence and comfort, and to enable [an infant] to live according to his real position in society" are also considered part of the class of necessaries. Wallace v. Leroy, 50 S.E. 243, 244 (W. Va. 1905).  See also 5 Williston on Contracts § 9:18 at 149 (Richard A. Lord, ed., 4th ed. 1993).  Williston describes "necessaries" as things "generally . . . under the broad headings of food, clothing of a reasonable kind . . . and shelter."  Id. § 9:19 at 159-61.

Certainly, the provision of legal services may fall within the class of necessaries for which a contract by or on behalf of an infant may not be avoided or disaffirmed on the grounds of infancy.  Generally, contracts for legal services related to prosecuting personal injury actions, and protecting an infant's personal liberty, security, or reputation are considered contracts for necessaries.  See generally, E.R. Tan, Annotation,

9

<u>Infant's Liability For Services Rendered By Attorney At Law</u>

<u>Under Contract With Him</u>, 13 A.L.R.3d 1251 (1967). "[W]hether attorney's services are to be considered necessaries or not depends on whether or not there is a necessity therefor. If such necessity exists, the infant may be bound. . . . If there is no necessity for services, there can be no recovery" for the services. <u>Fenn v. Hart Dairy Co.</u>, 83 S.W.2d 120, 124 (Mo. App. 1935).

The Supreme Court of Appeals of West Virginia recently addressed this issue in a paternity action against the estate of an infant's father, brought by the infant's mother on the infant's behalf. <u>Statler v. Dodson</u>, 466 S.E.2d 497 (W. Va. 1995). The court held that contracts for legal services by infants should be regarded as contracts for necessaries in some instances because "[i]f minors are not required to pay for legal representation, they will not be able to protect their various interests." <u>Id.</u> at 503.

Other states have also broadened the definition of "necessaries" to include contracts for legal services for the protection of an infant's property rights. In <u>Epperson v. Nugent</u>, 57 Miss. 45 (1879), the Supreme Court of Mississippi held an infant, without a guardian, liable on a contract for legal services incurred for the protection of the infant's property rights. The court noted that the "liability of an

10

infant for necessaries is based on the necessity of his situation." Id. at 47. The court further noted that "[w]hat are 'necessaries' . . . depends on circumstances, and each case must be governed by its own." Id. Similarly, in Owens v. Gunther, 86 S.W. 851, 852 (Ark. 1905), the Supreme Court of Arkansas considered as necessaries the legal services incurred for the protection of infants' property rights when the infants' guardian had an interest adverse to the infants' interest in the property.

In determining whether the doctrine of necessaries may be applied to defeat an attempt to avoid or disaffirm a contract on the grounds of infancy, the trial court must first determine as a matter of law if the class of "things supplied" falls within the "general classes of necessaries." We hold that a contract for legal services falls within this class. However, the inquiry does not end with this determination. The ultimate determination is an issue of fact. The trier of fact must conclude that "under all the circumstances, the things furnished were actually necessary to the position and condition of the infant . . . and whether the infant was already sufficiently supplied." Bear, 131 Va. at 454, 109 S.E. at 316. If the contract does not fall within the "general classes of necessaries," the trial court must, as a matter of law, sustain the plea of infancy and permit the avoidance of the contract.

11

Similarly, if the contract does fall within the "general classes of necessaries," but upon consideration of all of the circumstances, the trier of fact determines that the provision of the particular services or things was not actually necessary, the plea of infancy must be sustained.  Where there is a successful avoidance of the contract, the trial court may not circumvent the successful plea of infancy by affording a recovery to the claimant on the theory of quantum meruit. However, if the plea of infancy is not sustained, the claimant is not entitled to enforcement of the express contract.  Rather, as we have previously held, "[e]ven in contracts for necessaries, the infant is not bound on the express contract but on the implied contract to pay what they are reasonably worth." Id. at 450, 109 S.E. at 314.

While the term "quantum meruit" is not used in our prior cases concerning the necessaries doctrine, it is the measure of any award when a court has found an implied contract by application of the necessaries doctrine.  We agree with the Court of Appeals of Kentucky (then the highest appellate court in that state), in a case dealing with a ward confined in an asylum for the insane, that "the asylum may recover for necessaries furnished him on a quantum meruit, just as a

12

recovery may be had for necessaries furnished an infant."

<u>Michaels v. Central Ky. Asylum</u>, 81 S.W. 247, 248 (Ky. 1904).[1]

In this case, the final decree provided, in pertinent part, that "for the reasons stated from the bench, it being the opinion of the [c]ourt that the contract at issue (which was made while [Jonathan] was a minor) was not one for necessities and therefore, was void."  The reasons stated from the bench were as follows:

> [T]o the extent that the contract between Mr. Zelnick and Ms. Adams is binding upon the child I rule that it is not. That it was conducted while he was in his minority and he's not bound by that.
>
> * * * *
>
> The [c]ourt doesn't find that the doctrine of necessity necessarily applies because the matter could have been adjudicated after the majority of the young man, who was within a few years of his majority at the time that all of this came out.
> So the [c]ourt therefore finds that the contract entered into was void. At the same time the [c]ourt believes in equity,

---

[1] In the companion appeal, <u>Adams v. Zelnick</u>, Record No. 011391 (April 19, 2002), Jonathan argues that Zelnick may not recover <u>quantum</u> <u>meruit</u> because it was not pled.  While it is generally correct that a party may not recover upon a theory not pled, <u>see</u> <u>Potts v. Mathieson Aklali Works</u>, 165 Va. 196, 207, 181 S.E. 521, 525 (1935), in this case, <u>quantum</u> <u>meruit</u> is the only basis for recovery, if any, when a plea of infancy is met with a claim that necessaries were provided.  Consequently, the issue of <u>quantum</u> <u>meruit</u> was properly before the trial court as a basis for recovery inherent in a case involving the application of the necessaries doctrine.

13

that the attorney is entitled to a fee,
and maybe even a very substantial fee.

If the trial court properly determined that the necessaries doctrine did not apply to this case, then it was error to, nonetheless, make an award of attorney's fees on a quantum meruit basis.  However, as more fully developed below, the trial court erred, on this record, in determining that the doctrine of necessaries did not apply.

Upon review of the record, we hold that the first reason stated by the trial court for holding that the necessaries doctrine did not apply, namely that the contract "was conducted while he was in his minority and he's not bound by that," is an error of law.  We hold that a contract for legal services is within the "general classes of necessaries" that may defeat a plea of infancy.  The second reason stated by the trial court for holding that the necessaries doctrine did not apply, namely that "the matter could have been adjudicated after the majority of the young man," is a factual determination.  We hold that this determination is plainly wrong and without evidence in this record to support it.

The factual resolution of whether services or things provided are necessaries must be determined by consideration of the circumstances at the time of rendering the services or providing the things in issue.  While vision is often clearer in

14

hindsight, it is unfair and inappropriate to impose a retrospective analytical burden upon the provider of alleged necessaries to an infant.

The trial court's determination that the necessaries doctrine did not apply was made upon motion for summary judgment filed by Jonathan. Nowhere in Jonathan's motion for summary judgment is the issue raised that the services were unnecessary at the time rendered and should have been delayed until Jonathan reached the age of majority. Although Jonathan argues that the services were not necessary at all because he alleges that the Florida litigation resolved the question of his inclusion as a beneficiary under the will of Hylton Sr., the timing of the services was not even mentioned as an issue, much less as a reason for granting summary judgment. As such, the issue was not before the trial court and no evidence was before the court upon which the judgment could rest.

Because the trial court erred in its determination, on this record, on summary judgment, that the doctrine of necessaries did not apply, we will reverse the judgment of the trial court and remand for further proceedings, including the taking of evidence on the issue of the factual determination of necessity "under all of the circumstances." Consistent with this opinion, should the trial court upon remand hold that the doctrine of necessaries does not apply because the evidence adduced does not

15

support the claim, the contract is avoided and no award shall be made.

Should the trial court upon remand hold that the evidence is sufficient to defeat Jonathan's plea of infancy, the trial court shall receive evidence of the reasonable value of the services rendered.  If an award is to be made, nothing herein should be interpreted to preclude the trier of fact from fashioning an award appropriate to the unique circumstances of this case,[2] including a contingent award at an appropriate percentage.  Any award, if made by the trial court, must be fully supported by the evidentiary record and in accordance with our various opinions concerning an award based upon <u>quantum meruit</u>.  <u>See</u>, <u>e.g.</u>, <u>Wood v. Carwile</u>, 231 Va. 320, 343 S.E.2d 346 (1986); <u>see</u> <u>also</u> <u>Hughes v. Cole</u>, 251 Va. 3, 465 S.E.2d 820 (1996).

<u>Reversed and remanded</u>.

---

[2] We note the particular difficulty of making a present award subject to judgment and execution, where Jonathan's potential receipt of distributions, if any, was anticipated by the parties to be in the years 2014 and 2021.