PRESENT: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and Agee, JJ.

ROBERT J. ZELNICK

                                        OPINION BY
v.  Record No. 040916          JUSTICE G. STEVEN AGEE
                                     January 14, 2005
JONATHAN RAY ADAMS

            FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                  Thomas A. Fortkort, Judge Designate


     In Zelnick v. Adams, 263 Va. 601, 561 S.E.2d 711 (2002),

(Zelnick I), we held that "a contract for legal services is

within the 'general classes of necessaries' that may defeat a

plea of infancy."  Id. at 611, 561 S.E.2d at 717.  We remanded

the case for further proceedings "on the issue of the factual

determination of necessity 'under all the circumstances.' "  Id.

at 612, 561 S.E.2d at 718.  The trial court, on remand,

determined the legal services at issue were not " 'necessities'

under all the circumstances of [the] case." For the reasons set

forth below, we will affirm the judgment of the trial court.

                          I.  BACKGROUND

     The facts relating to this controversy were thoroughly

stated in Zelnick I.  We additionally state here only facts

particularly pertinent to the matters on remand.

     "A contract with an infant is not void, only voidable by

the infant upon attaining the age of majority."  Id. at 608, 561

S.E.2d at 715 (citation omitted).  When a plea of infancy is

timely raised, as in this case, the trial court makes a mixed inquiry of law and fact to ascertain whether the defense applies to the case at hand. As we described in Zelnick I, the initial inquiry of the trial court is a matter of law: "whether the 'things supplied' to the infant under a contract may fall within the general class of necessaries"? Id. If this first query is answered in the affirmative, then the trial court proceeds to a second inquiry on a matter of fact: "whether there is sufficient evidence to allow the finder of fact to determine whether the things supplied were in fact necessary in the instant case." Id.

Should this second inquiry also be answered in the affirmative, then the trial court must resolve a third query, also one of fact, which is "whether the 'things supplied' were actually necessary to the 'position and condition' of the infant"? Id. Should all three inquiries be answered in the affirmative, then the plea of infancy is defeated and the infant is bound "under an implied contract to pay what the goods or services furnished were reasonably worth." Id.

In Zelnick I, the trial court erroneously answered the first inquiry in the negative because "a contract for legal services is within the 'general classes of necessaries' that may defeat a plea of infancy." Id. at 611, 561 S.E.2d at 717. Although our decision definitively answered the first inquiry as

a matter of law, the prior record was without evidence upon which the trial court could answer the remaining questions of fact. See Id. at 612, 561 S.E.2d at 717-18. We, therefore, remanded the case for the taking of such evidence as necessary to answer those questions. Id., 561 S.E.2d at 718.

Upon remand, Jonathan Ray Adams (Jonathan) contended the legal services provided for him by Robert J. Zelnick (Zelnick), under the contract executed for Jonathan by his mother, Mildred A. Adams (Adams) were not "in fact necessary." Alternatively, even if Zelnick's legal services were necessary, Jonathan argued they were not "actually necessary to the 'position and condition of the infant'" at the time rendered.

Jonathan introduced evidence that he was living a comfortable lifestyle in a middle class home and was not "necessitous." He further argued that the suit filed by Zelnick was not necessary because his status as issue for purposes of distributions from the trusts of Jonathan's grandfather, Cecil D. Hylton, Sr. (Mr. Hylton) was settled by a Florida court's paternity order establishing Cecil D. Hylton, Jr. (Sonny) as his biological father.

Jonathan also argued that Zelnick's legal services, even if necessary at some point, were not necessary during the time of his minority because he had not been consulted with, or asked to approve, the legal services contract. In addition, Jonathan

contended no legal action was necessary during his minority because distributions under the trusts would not be made until 2014 and 2021, long after he was an adult. Accordingly, Jonathan averred no prejudice could have occurred to him had Zelnick waited until Jonathan was 18 and obtained his consent before proceeding with legal action against the trusts. Further, Jonathan testified the legal proceedings prosecuted by Zelnick had harmed Jonathan because it exacerbated tensions between Adams and Sonny thus adversely affecting him.

In response, Zelnick contended the Florida court's paternity order was not determinative of Jonathan's status under the trusts. Zelnick argued that reliance on the foreign judgment was suspect in view of the long-standing hostility between Adams and Sonny regarding Jonathan and Sonny's consistent opposition to any recognition or support for him. Moreover, Zelnick directed the trial court's attention to the fact that Mr. Hylton's will placed the decision as to Jonathan's status as issue for purposes of trust distributions within the purview of the trustees. Despite repeated requests from Adams and Zelnick, the trustees had not confirmed Jonathan's status for the purposes of the prospective trust distributions. Adams also communicated to Zelnick that she feared payments were being made to some of Mr. Hylton's grandchildren through the trusts

4

although there appeared to be no mechanism in the trust to permit payments at that time.

The trial court initially determined that the Florida paternity order did not settle Jonathan's status as issue of Mr. Hylton for purposes of the trust distributions. Jonathan's position asserting the conclusive effect of the Florida judgment was "not supported by the evidence." In effect, the trial court's initial determination was that Zelnick's legal services, "the things supplied," were in fact necessary because Jonathan "would be unable to receive a final answer as to whether or not he would share in his grandfather's estate without court intervention."

Having determined that Zelnick's legal services were necessary, the trial court then addressed the final inquiry, "whether the 'things supplied' were actually necessary to the 'position and condition of the infant.' " Id. at 608, 561 S.E.2d at 715. The trial court answered this query in the negative, finding that the provision of legal services at the time provided were not " 'necessities' under all the circumstances of his case." The trial court set out two primary grounds for its holding. First, "[t]he delay in litigation for less than two years would not have compromised Jonathan's position." Second, that Zelnick failed to consult Jonathan and obtain his approval before filing suit because "with a minor

5

approaching his majority, he is entitled to at least participate in far-reaching decisions affecting his position and condition in life unless there is some reason requiring immediate legal attention."  The trial court then entered judgment in favor of Jonathan sustaining his plea of infancy and denying any recovery to Zelnick.

Zelnick assigns error to the trial court's judgment on two grounds.  First, Zelnick contends the trial court erred in finding his legal services "were not actually necessary to the position and condition of the infant."  Second, Zelnick claims the trial court erred by not fashioning a remedy to award him compensation.  We awarded Zelnick this appeal.

## II.  STANDARD OF REVIEW

In Zelnick I, our holding that legal services come within the ambit of necessaries resolved a question of law.  We noted, however, that the second and third determinations to be addressed in analyzing a plea of infancy were issues of fact.  Id. at 609, 561 S.E.2d at 716.  As such, we will reverse the factual finding of the trial court only if it is plainly wrong or without evidence to support it.  Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002) (citation omitted).  We also give deference to the trial court's findings of fact and view those findings in the light most favorable to Jonathan, the prevailing party below.  Caplan v.

6

<u>Bogard</u>, 264 Va. 219, 225, 563 S.E.2d 719, 722 (2002) (citation omitted).

### III.  ANALYSIS

The issues to be resolved by the trial court on remand relate to two matters of fact:  Were Zelnick's legal services "in fact necessary" to Jonathan, and, if so, were the legal services "actually necessary" to his "position and condition"?

As noted above, the trial court found that Zelnick's legal services were "in fact necessary" because Jonathan's status as issue of Mr. Hylton for purposes of trust distributions would not have been resolved without legal proceedings to compel a resolution.  This finding is not challenged by Jonathan on appeal.  Our inquiry, therefore, goes only to the final question of whether Zelnick's legal services were "actually necessary" to Jonathan's "position and condition."  As we indicated in <u>Zelnick I</u>, the answer to this inquiry "must be determined by consideration of the circumstances at the time of rendering the services or providing the things in issue."  <u>Zelnick I</u>, 263 Va. at 611, 561 S.E.2d at 717.[1]

---

[1] When a plea of infancy is raised, the facts answering the inquiry into whether the "things supplied" are "necessary" will often also answer the related question of whether the "things supplied" are necessary at the time supplied.  However, as this case illustrates, that is not always so.  Here, the trial court, having found Zelnick provided a necessary service, was then required to separately determine whether that service was

The trial court found that Zelnick's services were not actually necessary to Jonathan when rendered.  It is to this finding that Zelnick specifically assigns error.  While we review a trial court's factual findings under a deferential standard of review, not overturning the trial court's factual findings unless plainly wrong or without evidence to support them, the trial court's ruling on this point is based on a dual foundation.  See Eure, 263 Va. at 631, 561 S.E.2d at 667.  One prong of that foundation is the trial court's determination that Jonathan had a legal right to be consulted or approve Zelnick's retainer agreement before it could be effective.  The trial court erred in reaching this conclusion.

Specifically, the trial court erred in ruling that "a minor approaching his majority . . . is entitled to at least participate in far reaching decisions affecting his position and condition in life."  Minority is a legal status established by the legislature.  Hurdle v. Prinz, 218 Va. 134, 137, 235 S.E.2d 354, 356 (1977) (citations omitted).  That status appends to any person under the age of eighteen.  Code § 1-13.42(a)(1).  By contrast, an adult is "a person eighteen years of age or over."  Code § 1-13.42(a)(3).  The law makes a distinction between the two classes, and by the plain language of the statute, one

---

actually necessary when rendered in 1997 prior to Jonathan's attaining adulthood.

8

cannot be both a minor and an adult.  The terms are mutually

exclusive.  See Temple v. Petersburg, 182 Va. 418, 424, 29

S.E.2d 357, 359 (1944).  This court has previously drawn a clear

line between minority and majority.

> In law there is no "twilight zone" between an infant
> ten years of age and an infant on the verge of
> maturity.

Strother v. Lynchburg Trust & Sav. Bank, 155 Va. 826, 833, 156

S.E. 426, 428 (1931).  While it might be prudent to consult a

minor approaching his majority regarding his view on legal

contracts or proceedings concerning him, an obligation to do so

is not the law of the Commonwealth.  Where the General Assembly

desires to mandate consultation with, or the consent of a minor,

it knows how to do so, but has not in this circumstance.  See

Code § 16.1-283(G) (allowing a child over 14 years of age to

object to the court's termination of his parents' residual

parental rights).  The trial court thus erred, as a matter of

law, in partly basing its decision on a failure of Zelnick to

consult Jonathan or obtain his consent to legal representation.

That error, however, does not resolve Zelnick's assignment

of error as to the trial court's finding of fact which the trial

court states as follows:

> In this case, the facts are that the waiting until the
> child reached his majority would not have prejudiced
> his position in any way and that under the
> circumstances of this case the legal services were not
> necessities in the factual context of this case.

9

The record amply supports the trial court's determination. Zelnick filed suit on Jonathan's behalf on May 15, 1997, when Jonathan was less than a year from attaining status as an adult. The consent decree establishing Jonathan as Mr. Hylton's grandchild and issue was entered on January 23, 1998, less than three months before Jonathan's eighteenth birthday.

Before Zelnick executed the retainer agreement, he obtained a copy of Mr. Hylton's probated will and reviewed the trust accountings. Zelnick knew that the distribution dates for the grandchildren's trusts would be in 2014 and 2021.[2] Zelnick testified that he "read the will over many times" in order to "make sure [he] had a full understanding of the terms and conditions and how the will would work." Even though any interest Jonathan might have had in the trusts would not be realized for at least 17 years, Zelnick began writing to the trustees, asking them to acknowledge Jonathan as Mr. Hylton's grandson and issue for the purposes of trust distributions.

---

[2] Zelnick testified that in deciding to file suit when he did, he considered the fact that Mr. Hylton had also set up a trust for his children. If Sonny died before that trust was disbursed, and Jonathan had already been declared a grandchild of Mr. Hylton, Jonathan would be able to take as a child of Sonny's under that separate trust. Zelnick noted that these trusts had earlier distribution dates than the grandchildren's trusts. Even had Sonny died at the time Zelnick filed suit, however, the disbursement date was still somewhat after Jonathan reached the age of majority.

In defending his decision to file suit when he did, Zelnick makes much of the fact that the trustees did not respond with a definite acknowledgement of Jonathan as Mr. Hylton's issue.  He testified that Adams "had heard that distributions were being made from the estate to the other grandchildren," and she was unable to get any information about Jonathan's status from the executors or trustees of Mr. Hylton's estate.

However, trustees' counsel did confirm by letter of December 13, 1996, that the triggering events for any distributions from Mr. Hylton's trust were "many years in the future."  Trustees' counsel also informed Zelnick that the trustees had been advised to "carefully evaluate the merits of [Jonathan's] claim" "as soon as any amount is to be paid to Mr. Hylton's grandchildren . . . ."  Trustees' counsel also confirmed distributions of the trusts would be made in 2014 and 2021 respectively.  On February 19, 1997, trustee's counsel again replied to Zelnick indicating that the trust was "still in the process of conducting a due diligence analysis of [Jonathan's] claim."  Nonetheless, Zelnick filed suit on Jonathan's behalf on May 15,1997, 11 months before Jonathan became an adult.

"By consideration of the circumstances at the time of rendering the services," Zelnick I, 263 Va. at 611, 561 S.E.2d at 717, we agree with the trial court's judgment that delaying

11

the suit until Jonathan became 18 "would not have compromised Jonathan's position." The record does not reflect any advantage to the legal proceedings before Jonathan turned 18 or that he would have been disadvantaged by waiting. While the communications from the trustees' counsel did not confirm Jonathan's status as Mr. Hylton's grandson, neither was it denied. In fact, the trustees confirmed Zelnick's understanding of the trust's provisions that any distribution to Jonathan was years away, long after he would be an adult. Reliance on these facts does not constitute the retrospective analysis we cautioned against in Zelnick I, because these were the circumstances at the "time of rendering the services or providing the things in issue" and known to Zelnick. 263 Va. at 611, 561 S.E.2d at 717.

Zelnick's legal action on Jonathan's behalf was not a necessity to his "position and condition" at the time this service was rendered. The trial court thus did not err in so finding because its decision is supported by the record and is not plainly wrong.[3]

IV. CONCLUSION

---

[3] Having determined that the trial court correctly sustained Jonathan's plea of infancy, we do not address Zelnick's second assignment of error. As we clearly held in Zelnick I: "[S]hould the trial court upon remand hold that the doctrine of necessaries does not apply because the evidence adduced does not

12

We find sufficient support in the record for the trial court's judgment that Zelnick's legal services were not necessary for Jonathan's position and condition under all the circumstances.  The trial court was thus correct in sustaining Jonathan's plea of infancy and denying any fee award to Zelnick. We will accordingly affirm the judgment of the trial court.

<u>Affirmed.</u>

---

support the claim, the contract is avoided and no award shall be made."  263 Va. at 612, 561 S.E.2d at 718.