PRESENT: All the Justices[1]

VIRGINIA DEPARTMENT OF TAXATION

OPINION BY
v. Record No. 201263             CHIEF JUSTICE S. BERNARD GOODWYN
February 10, 2022

R.J. REYNOLDS TOBACCO CO.

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Jr., Judge

In this appeal, we consider whether the calculation of the apportionment of a multistate corporation's Virginia taxable income should include the value of raw materials that age while being stored in Virginia, when those materials are processed and used in manufacturing in another state.

BACKGROUND

Lorillard Tobacco Company (Lorillard) is a Delaware corporation with its principal place of business in North Carolina.[2] Lorillard is a multistate business that manufactures cigarettes in North Carolina and sells those cigarettes throughout the United States. It engages in business activities within Virginia and maintains warehouses and facilities in Danville, Virginia (the Danville Facilities).

Lorillard purchases leaf tobacco from third-party suppliers and receives the leaf tobacco at its Danville Facilities. The leaf tobacco is stored in the Danville Facilities for an aging period of 13 to 23 months, depending on the type and grade of the leaf tobacco. The aging is a natural

---

[1] Chief Justice Lemons presided and participated in the hearing and decision of this case prior to the effective date of his retirement as Chief Justice on December 31, 2021. Justice Goodwyn was sworn in as Chief Justice effective January 1, 2022.

[2] Sometime after Lorillard filed suit in the circuit court, Lorillard was acquired by and merged into R.J. Reynolds Tobacco Company, and the suit in the circuit court proceeded in the name of R.J. Reynolds Tobacco Company (R.J. Reynolds Tobacco Company is hereinafter referred to as Lorillard, the name of the entity whose tax assessments are at issue).

process that occurs without human intervention or specialized equipment. Once Lorillard's production and manufacturing team in North Carolina determines that the leaf tobacco has reached the target drying age, it instructs the Danville Facilities to ship the leaf tobacco to North Carolina for processing and manufacturing into cigarettes.

As a multistate corporation, Lorillard earns income from business activities taxable within and without Virginia. The Virginia Department of Taxation (the Department) requires multistate businesses to apportion their income to determine the amount of their income which is taxable in Virginia. The apportionment of a multistate corporation's income requires multiplying the multistate corporation's overall income by a fraction which attempts to capture the percentage of that income produced in Virginia. Multistate corporations, such as Lorillard, must calculate their Virginia taxable income using the Virginia apportionment methodology.[3] Code §§ 58.1-408–409.

For all tax years relevant to this appeal, on its original Virginia corporation income tax returns, Lorillard included the value of its entire leaf tobacco inventory which was aging in its Danville Facilities, in calculating its Virginia property factor. Doing so increased Lorillard's purported Virginia tax liability.

---

[3] The apportionment involves multiplying the multistate corporation's total income by a fraction, "the numerator of which is the property factor plus the payroll factor, plus twice the sales factor, and the denominator of which is four." Code § 58.1-408.

The factor relevant in this case is the property factor. The property factor is composed of a numerator, which is the average value of a corporation's real and tangible personal property "owned and used . . . in the Commonwealth during the taxable year," and a denominator, the average value of a corporation's real and tangible personal property "owned and used . . . during the taxable year and located everywhere, to the extent that such property is used to produce Virginia taxable income." Code § 58.1-409.

In 2011, for the tax years ending in June 2008,[4] December 2008, and December 2009 (collectively, the First Assessments), Lorillard filed a request with the Department to recalculate the apportionments used in the First Assessments. Lorillard claimed that including the value of its stored leaf tobacco in the property factor resulted in apportionments that overstated the amount of Lorillard's business in Virginia, because the calculation improperly included the value of the leaf tobacco which was stored, but not used in Virginia.

The Department denied Lorillard's request. Lorillard sought reconsideration of the Department's decision. Lorillard also timely filed amended tax returns for the First Assessments, removing the value of all stored leaf tobacco from the property factor; correspondingly, Lorillard requested a refund of $4,632,117. The Department denied Lorillard's motion for reconsideration and refused Lorillard's amended tax returns and refund claims.

Consequently, on September 25, 2013, Lorillard filed an "Application for Correction of Erroneous Assessment of Corporation Income Taxes" in the Circuit Court of the City of Danville, challenging the denial of its refund claims. Lorillard sought an order declaring that it is not required to include leaf tobacco, merely stored in Virginia, in its property factor; that the Department's denial of its refund claim was erroneous; and that it is entitled to a refund in the amount of $4,632,117, plus interest.

In its application, Lorillard asserted that Code § 58.1-409 does not require it to include the leaf tobacco in its property factor because the stored leaf tobacco is not "used" by Lorillard during the taxable year. Lorillard also asserted that its leaf tobacco is analogous to property under construction and to mineral rights, both of which are specific types of property that a

---

[4] In June 2008, Lorillard's parent company was spun off from its parent consolidated group, causing Lorillard to have a short tax year for income tax purposes and requiring Lorillard to file two short-period tax returns for 2008.

3

Department regulation, 23 VAC § 10-120-160(A)(4) (the Regulation), deems as property that is not being "used."[5]

While Lorillard's application concerning the First Assessments was pending before the circuit court, Lorillard filed amended tax returns and refund claims regarding the Department's tax assessments for the tax years ending in December 2010, December 2011, and December 2012 (collectively, the Second Assessments). In its amended tax returns, Lorillard removed the value of the leaf tobacco stored at its Danville Facilities from the property factors used to determine its income tax liability. Lorillard requested a refund of $6,389,390, based upon the amended Second Assessments tax returns. The Department did not timely respond to Lorillard's filing of the refund claims. Thus, by operation of Code § 58.1-1823, the Second Assessments refund claims were deemed denied.

On August 31, 2017, Lorillard filed a second "Application for Correction of Erroneous Assessment of Corporation Income Taxes" in the Circuit Court of the City of Danville, challenging the denial of its refund claims for the Second Assessments. Lorillard's second

---

[5] In the Regulation, the Department provides guidance on the definition of "used" by giving examples of what constitutes "use" of property in various specific situations:

  b. Property under construction during the taxable year (except inventoriable goods in process) shall be excluded from the factor until such property is actually used. If the property is partially used while under construction, the value of the property to the extent used shall be included in the property factor.

  c. Mineral rights are used when placed in production or developed to the point where they could be placed in production but are held as reserves. Exploration and development do not place mineral rights in use for the property factor. But see 23 VAC [§] 10-120-170 for valuation.

23 VAC § 10-120-160(A)(4).

4

application raised arguments identical to the first application, and asserted that it was entitled to an additional refund in the amount of $6,389,390, plus interest.

The circuit court consolidated Lorillard's first and second applications and heard Lorillard's arguments concerning the First Assessments and the Second Assessments (collectively, the Years in Issue) together.

Lorillard's first witness was Dennis Juan Burge, a former product development manager for Lorillard. He testified that the operations at the Danville Facilities merely received shipments of boxed leaf tobacco and kept the stacked boxes of leaf tobacco in storage until the boxes are shipped to Lorillard's North Carolina processing and manufacturing facilities. Burge stated that, once stored, "absolutely nothing" is done to the boxed leaf tobacco; "[i]t just sits there." He said that the leaf tobacco ages under ambient temperatures and weather—Lorillard does not need to introduce temperature controls, heat, or air conditioning. Burge also testified that the leaf tobacco is never processed into cigarettes in the same year that the leaf tobacco is purchased.

Lorillard also called Dr. Anthony Gerardi, a former employee of R.J. Reynolds Tobacco Company, who explained that during the aging process the leaf tobacco's chemicals undergo a naturally occurring equilibration process which results in uniformity in each leaf tobacco strip's flavor. He explained that this aging process is accomplished by storing the dried-down leaf tobacco in stacked boxes in a moist environment.

Lorillard's third, and final, witness was Patrick Z. Messick, who held the position of Director of Income Taxes at Lorillard. Messick explained that the only difference between the original tax returns and the amended returns for the Years in Issue was that in the amended

5

returns, the value of the leaf tobacco inventory in the Danville Facilities was removed from both the numerator and denominator of the property factor.

After Lorillard's case-in-chief, the Department noted that the documents it previously submitted to the circuit court were submitted pursuant to a stipulation, and that it had no additional evidence to present. The parties submitted post-trial briefs in lieu of making closing arguments.

In its subsequent letter opinion, the circuit court found that Lorillard had not "used" the leaf tobacco as that term is employed in Code § 58.1-409, and that the value of the stored leaf tobacco, therefore, should not be included in determining Lorillard's Virginia corporation income tax liability.

It found that the evidence that Lorillard's manner of storing the leaf tobacco is not necessary to the aging process was uncontroverted, and it concluded that the simple placement of the leaf tobacco into the warehouse did not constitute "use" of the tobacco, as alleged by the Department. The circuit court held that the plain meaning of "used," i.e., "to employ for the accomplishment" of a purpose or "to avail oneself of," did not support the Department's interpretation and application of the Code. It observed that it "requires logic gymnastics" to see "how Lorillard's simple placement of the leaf tobacco into [the Danville Facilities] constitutes use" because the record does not show that the aging process is prompted or initiated as a result of the leaf tobacco's entry into and storage at the Danville Facilities.

Although both the Department and Lorillard claimed that analogies to the examples stated in the Regulation supported their interpretation of Code § 58.1-409, the circuit court concluded that, absent ambiguity, recourse to the Regulation's interpretation of the term "used" was unnecessary because the plain language of the Code controls. Further, it held that upon a

6

plain reading of the aspect of the Regulation cited by the parties, in relevant part, the Regulation was not applicable in this instance. The circuit court noted that it "render[ed] no opinion on whether the [R]egulation is plainly inconsistent with [Code § 58.1-409] in all circumstances," but opined that to the extent that the Regulation requires Lorillard to include the value of the stored leaf tobacco in its property factor, the Regulation is plainly inconsistent with Code § 58.1-409.

Thus, the circuit court held that the Department's corporation income tax assessments for the Years in Issue were erroneous and, the circuit court ordered the Department to correct the assessments by removing the value of all leaf tobacco from the numerator and the denominator of Lorillard's property factor. The circuit court ordered the Department to refund Lorillard the amount of its overpayments on the assessments for the Years in Issue, which totaled $11,021,507, plus interest.

The Department appeals.

ANALYSIS

The Department asserts that the circuit court "erred in determining that Lorillard did not 'use' its leaf tobacco inventory stored in Danville, Virginia, within the meaning of Code § 58.1-409," and that the circuit court also "erred in determining that 23 [VAC] 10-120-160 is 'plainly inconsistent' with Code § 58.1-409."

The Department argues that the word "used," as applied in Code § 58.1-409, must be understood to mean "to employ something for the purpose of accomplishing something." The Department asserts that Lorillard's storage of the leaf tobacco in the Danville Facilities constitutes "use" because the leaf tobacco is aging during the time it is stored there, and aging is important to the subsequent use of the leaf tobacco. Thus, the leaf tobacco is being processed for

7

the next phase of production by being stored at the Danville Facilities. The Department also contends that the leaf tobacco is similar to categories of property, i.e. "inventoriable goods in process," that its Regulation indicates should be included in calculating the property factor. *See* 23 VAC § 10-120-160(A)(4).

Lorillard responds that the term "used" requires a positive act or activity by the user, and it contends that keeping the leaf tobacco inside the Danville Facilities to prevent theft or damage is merely an exercise of ownership, and not "use" of the leaf tobacco as contemplated under Code § 58.1-409. It avers that the value of the leaf tobacco should not be included in the property factor because the leaf tobacco is not used while it is being stored in Virginia; rather, the leaf tobacco is being stored for future use in the manufacture of its cigarettes, which occurs in Lorillard's facilities in North Carolina. Lorillard points out that the Regulation does not apply in this case because the Regulation's list of examples does not include leaf tobacco or other agricultural products that undergo natural aging.

"Under well-established principles, an issue of statutory interpretation is a pure question of law which we review de novo." *JSR Mech., Inc. v. Aireco Supply, Inc.*, 291 Va. 377, 383 (2016). We "give deference to the trial court's findings of fact and view those findings in the light most favorable to . . . the prevailing party below." *Zelnick v. Adams*, 269 Va. 117, 123 (2005). We reverse a trial court's factual findings if those findings are plainly wrong or without evidence to support them. *Id.*

The central question in this case is what the term "used" means under Code § 58.1-409 and the Regulation, and whether leaf tobacco, which is stored in Virginia prior to its use in the manufacture of cigarettes, is being used in Virginia because it ages during storage, even though the owner introduces no extrinsic act initiating or directing the aging process.

8

"When a statute, as written, is clear on its face, [we] will look no further than the plain meaning of the statute's words." *Commonwealth, Dep't of Tax'n v. Delta Air Lines, Inc.*, 257 Va. 419, 426 (1999). As such, "[w]hen the language of a statute is unambiguous, we are bound by the plain meaning of that language," unless "applying the plain language would lead to an absurd result." *Virginia Elec. & Power Co. v. State Corp. Comm'n*, 300 Va. 153, 161 (2021); *JSR Mech., Inc.*, 291 Va. at 377.

While the Department's and the Tax Commissioner's interpretation of a tax statute are entitled to great weight, if there is no ambiguity on the face of the statute, "the plain language [of the statute] controls and the agency's interpretation is afforded no weight beyond that of a typical litigant." *Nielsen Co. (US), LLC v. County Bd. of Arlington Cnty.*, 289 Va. 79, 88-89 (2015). In any case, a regulatory interpretation of a statute "does not bind a court in deciding [a] statutory issue." *Id.*

The relevant statutes state that "[t]he Virginia taxable income of any corporation . . . shall be apportioned . . . by multiplying such income by a fraction, the numerator of which is the property factor plus the payroll factor, plus twice the sales factor, and the denominator of which is four." Code § 58.1-408. Also,

> The property factor is a fraction, the numerator of which is the average value of the corporation's real and tangible personal property owned and used . . . in the Commonwealth during the taxable year and the denominator of which is the average value of all the corporation's real and tangible personal property owned and used . . . during the taxable year and located everywhere, to the extent that such property is used to produce Virginia taxable income and is effectively connected with the conduct of a trade or business within the United States and income therefrom is includable in federal taxable income.

Code § 58.1-409.

In this case, we agree with the Department and Lorillard that there is no ambiguity in the Code's employment of the term "used." As such, this Court will look no further than, and is

9

bound by, the plain meaning of the word "used," i.e., "to put into action or service" or "[t]o employ for the accomplishment of a purpose." Webster's Third New International Dictionary 2523 (1993); Black's Law Dictionary 1853, 1855 (11th ed. 2019).

We are required to defer to the circuit court's finding of fact that the storage of the leaf tobacco in the Danville Facilities is not necessary for the aging process. The leaf tobacco will age regardless of where it is kept. In fact, the circuit court found, and Lorillard's witness testified, that Lorillard does "absolutely nothing" to the leaf tobacco and that the leaf tobacco "just sits there" in the warehouse where it is stored. Allowing raw materials to sit does not constitute processing because processing requires that these materials undergo treatment that will result in a product that is more marketable or useful. *See Commonwealth, Dep't of Tax'n v. Orange-Madison Coop. Farm. Serv.*, 220 Va. 655, 658 (1980). Lorillard does not introduce any treatment to the leaf tobacco, nor does it perform any affirmative act or activity to prompt or aid the aging process. That the leaf tobacco ages as it sits in the ambient conditions of the Danville Facilities is a natural consequence of the passage of time, not of any effort on Lorillard's part. Thus, Lorillard does not "use" the leaf tobacco by storing it in its Danville Facilities. We agree with Lorillard that its leaf tobacco being stored in its Danville Facilities should not be included in calculating its property factor because it is not being "used" during the aging process.

The circuit court did not determine that the Regulation was plainly inconsistent with Code § 58.1-409. It ruled that the Regulation was not applicable in this instance, and specifically stated that it "renders no opinion on whether the [R]egulation is plainly inconsistent with the applicable provisions of law in all circumstances." We agree with the circuit court's conclusion that the Department's reliance on the Regulation to interpret the meaning of "used" in Code § 58.1-409 is unnecessary and inapposite. The Regulation is not applicable in this instance

10

because it does not contemplate aging agricultural raw materials in its categories of property that are "used." The parties agree that the term "used," in the context of Code § 58.1-409, is unambiguous; thus, there is no need for the circuit court to have relied, or for this Court to rely, on analogies to the Regulation's examples of categories of property that are being used to interpret an unambiguous statute. Accordingly, we conclude that the circuit court did not err in this regard in its rulings concerning the Regulation.

From the foregoing, we conclude that the leaf tobacco stored in the Danville Facilities is not "used" within the intendment of Code § 58.1-409 simply because it is aging while it is in storage. Thus, the circuit court did not err in holding that the Department's corporation income tax assessments for the Years in Issue were erroneous because the value of the leaf tobacco stored in the Danville Facilities should not have been included in Lorillard's property factor.[6]

CONCLUSION

In summary, for the reasons stated, we hold that the circuit court did not err in holding that the Department's corporation income tax assessments for the Years in Issue were erroneous and ordering the Department to refund Lorillard the amount of its overpayments on the assessments for the Years in Issue. We therefore affirm the judgment of the circuit court.

*Affirmed.*

---

[6] Having determined that the circuit court did not err in its judgment, we do not need to address Lorillard's cross-assignments of error, which raise alternative bases for the circuit court's conclusion.

11